510 A.2d 800

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Stanley HACKNEY, Appellee.**

Superior Court of Pennsylvania.

Argued March 12, 1986.

Filed June 3, 1986.

Joseph J. Mittleman, Assistant District Attorney, Media, for Com., appellant.

Eugene J. Malady, Upper Darby, for appellee.

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

WIEAND, Judge:

The sole issue in this appeal by the Commonwealth is whether the trial court erroneously suppressed inculpatory statements made by Stanley Hackney, a seventeen year old,

borderline mental retardate,[1] in the absence of his attorney. After having conducted a careful review of the record, we conclude that the order of the trial court was correct and must be affirmed.

■ When we review an order suppressing evidence, we are bound by the trial court's findings of fact so long as those findings are supported by competent evidence. *Commonwealth v. Brown*, 341 Pa.Super. 138, 141, 491 A.2d 189, 190 (1985); *Commonwealth v. Williams*, 287 Pa.Super. 19, 26, 429 A.2d 698, 702 (1981). The trial court's findings in the instant case, supported by competent evidence, suggest the following fact pattern.

Hackney was a suspect in a double homicide which had occurred in Darby, Delaware County, on March 13, 1983. A warrant for his arrest was issued on August 16, 1983. Hackney was at that time represented by Joseph Casey, Esquire, a member of the Philadelphia Public Defender's Office, a fact which was known to investigating members of the District Attorney's Office in Delaware County. Indeed, Detective Fitzpatrick had on several occasions spoken with Casey and had sought Casey's cooperation in permitting Fitzpatrick to speak with Hackney during the time when Hackney was an inpatient at The Fairmount Institute, a psychiatric hospital. Hackney was arrested at the hospital on August 17, 1983 at or about 1:35 p.m. Prior to Hackney's arrest, Casey had told Fitzpatrick that Fitzpatrick should not speak with Hackney unless he, Casey, were present. Casey also prepared a letter for presentation to arresting law enforcement officials. Although hospital personnel attempted to deliver the same to the arresting officers, the latter, after consulting with their superiors, refused to accept the same.

When Hackney was taken to and arrived at the Criminal Investigation Division of the Office of the District Attorney in Delaware County, he handed to Sgt. Minshall a letter as follows:

1. Hackney had an IQ of 65 and a mental age of 9.5 years. He suffered from mood depressions with psychotic features.

August 17, 1983

"Gentleman:

I hereby demand that you do not question me. I hereby state to you that I wish to remain silent. I demand the presence of, and prior consultation with my attorney, Joseph M. Casey or another attorney of the Defender Association of Philadelphia or another attorney during any questioning, confrontation and/or any event at which I am entitled by law to the presence of; or consultation with an attorney. I hereby state to you that I object to, any search, seizure, lie detector test or other action to which I may under law object, including any examination. The foregoing is to remain in effect unless and until specifically waived by me in writing in the presence of my present attorney or any attorney who may represent me in the future."

/S/ STANLEY HACKNEY

Minshall read the letter but did not contact Casey. Instead, he called the District Attorney's Office, and later the Office of the Delaware County Public Defender. At 2:55 p.m., an assistant public defender, Barbara Scarlata, Esquire, arrived and was informed of the charges against Hackney. Upon leaving, after having spoken with Hackney, Scarlata told the detectives then present that Hackney would not be giving a statement and that he would call her, Scarlata, if he decided to make a statement. Hackney was thereafter arraigned without counsel. After preliminary arraignment, he was not taken to the Delaware County Prison but was returned to the Criminal Investigation Division because, the suppression court found, "they intended to interrogate him and to get a statement from him." This interrogation was conducted without any attempt to notify Casey, Scarlata, the Delaware County Public Defender, or any other attorney on Hackney's behalf. Thus, no attorney was present during the ensuing events. Instead, Hackney's parents were summoned and, upon arrival, were told that their son was involved in a murder, that he had not been the "shooter," and that if he gave a statement, the District Attorney's

Office would be advised of his cooperation. The parents were then permitted to confer in private with their son for a few minutes.

While they were still conferring, Sgt. Minshall entered the room and inquired whether Hackney intended to give a statement. His parents said that they wanted Attorney Scarlata to be present. Sgt. Minshall conveyed this request to Detective Fitzpatrick. Neither Scarlata, Casey, nor any other attorney was summoned. Instead, Fitzpatrick entered the room where Hackney had been conferring with his parents and read from a card containing *Miranda* warnings.[2] Mrs. Hackney, the suspect's mother, had only a ninth grade education; however, she told Fitzpatrick unequivocally that they wanted an attorney. A call was placed to the Public Defender's Office, which, because of the lateness of the hour, was closed. Hackney and his parents were told that efforts to contact Scarlata had been unsuccessful. The representatives of the District Attorney then proceeded to question Hackney and extract a statement from him.

The statement was tape recorded and later transcribed. At the outset, however, Hackney was again advised of his constitutional rights and asked if he wanted an attorney. When he replied, "Yes," Fitzpatrick turned off the recorder and embarked upon further discussion with Hackney. The recorder was not restarted, the trial court found, until "Fitzpatrick was satisfied that the Defendant would change his answer and respond 'no' to this question." When, much to Fitzpatrick's surprise, Hackney again requested an attor-. ney, the recorder was again turned off, and a further "off-the-record conversation" was conducted. Finally, after coaching by the detectives, Hackney was recorded as having responded to a question concerning the need for counsel as follows: "Not yet at the present time." During the course of the ensuing statement, the tape recorder was

2. These rights had been read to Hackney alone on several prior occasions.

turned off on repeated occasions, and the nature of the "off-the-record" discussions does not appear.

On the following day, Hackney was removed from prison by the detectives of the District Attorney's Office and returned to the Criminal Investigation Division. Fitzpatrick and Detective Martin were present, as were Hackney's parents. Again, no attorney was present. Hackney made a request for Attorney Scarlata to be present. She was not summoned. Instead, Martin dialed the number of the Office of the Public Defender and thrust the telephone into the hands of Hackney's father. The identity of the person on the other end of the line, whether he or she was an attorney, and the nature of the conversation was not shown by the Commonwealth's evidence. Hackney thereafter signed the statement.

On August 23, 1983, Hackney was again taken to the Criminal Investigation Division to explain certain "discrepancies" in his prior statement. Again no attorney was present. Another statement was taken, although once again the recorder was periodically stopped, and there is no record of what was said while it was not functioning.

On August 25, 1983, still without having consulted with counsel, Hackney was taken to the scene of the earlier homicides, where the events surrounding the killings were reviewed with him. On this occasion, however, no formal statement was taken.

■ The trial court concluded that Hackney had not voluntarily and knowingly waived his right to counsel and ordered the suppression of all statements which Hackney had made. If a defendant indicates in any manner at any time prior to or during questioning that he wishes to remain silent or wants an attorney, interrogation must cease. *Miranda v. Arizona*, 384 U.S. 436, 444–445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966). See also: *Commonwealth v. Scarborough*, 491 Pa. 300, 313, 421 A.2d 147, 153 (1980). That Hackney indicated his desire to have counsel present, not only once but repeatedly, is clear, and the suppression

court so found. Although conceding Hackney's repeated requests for counsel, the Commonwealth argues that in time he changed his mind and waived the right to counsel. However, the law is clear that "when an accused has invoked his right to have counsel present during interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.... [A]n accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378, 386 (1981), *reh'g denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). See also: *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982).

■ It is the Fifth Amendment protection against compelled self-incrimination which provides the right to counsel during custodial interrogation. After arraignment, the right to counsel during interrogation is provided also by the Sixth Amendment guarantee of the assistance of counsel. "The arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment ...; thereafter, [law enforcement] efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies." *Michigan v. Jackson,* —— U.S. ——, ——, 106 S.Ct. 1404, 1407–1408, 89 L.Ed.2d 631, 638 (1986) (citations omitted). See also: *Maine v. Moulton,* 474 U.S. ——, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

■ In the instant case, the conduct of detectives employed by the District Attorney's Office is difficult to comprehend, much less to excuse. They were told repeatedly by Hackney that he did not intend to give a statement

without first speaking to an attorney. After Hackney had been visited by a Public Defender, she also told the detectives that Hackney would not make a statement and, if Hackney changed his mind, he would call her, the Public Defender. Despite knowledge that Hackney was not to be interrogated in the absence of counsel, the detectives employed by the District Attorney returned Hackney to their office following arraignment so that, in the absence of counsel, they could in time elicit a statement from him. Hackney continued to ask for an attorney. His parents also requested the presence of counsel. The requests for counsel were ignored. Hackney was thus worn down and ultimately made a statement without the presence or advice of counsel. On the following day, he was brought from prison, at the instance of the District Attorney's Office, to make additional statements. On none of these occasions did Hackney initiate the communication or conversation. On no occasion was counsel notified of the interrogation or allowed to be present.

It was the type of conduct indulged in by law enforcement officers in this case which the United States Supreme Court condemned and, by prophylactic rule, sought to prevent in *Edwards* and *Smith* and also in *Jackson*. To reverse the suppression order here entered would be, in view of the trial court's findings, to signal our refusal to apply the protections afforded by the Fifth and Sixth Amendments of the Constitution as interpreted by the highest court in the land. This we cannot and will not do.

The Commonwealth argues that we should limit narrowly the holdings in *Edwards* and *Smith* and hold that Hackney voluntarily waived his right to counsel by recorded statements that he did not need an attorney "at this time." To this end, the Commonwealth cited to us at argument the decision of the Pennsylvania Supreme Court in *Commonwealth v. Hubble*, 509 Pa. 497, 504 A.2d 168 (1986). The Commonwealth's argument evidences a misconception regarding *Hubble* and a demonstrable inability to comprehend

*Edwards* and *Smith.* In *Hubble,* the Supreme Court of Pennsylvania held that the defendant, who previously had voluntarily answered inquiries of police without being in custody, had failed to invoke clearly and unambiguously his right to counsel when he was interrogated custodially. In the instant case, the Commonwealth did not argue in the trial court and has not argued in this Court that Hackney failed to make an unambiguous request for counsel. Its argument, rather, was and is that irrespective of police misconduct which preceded it, Hackney's induced statement that he did not want an attorney constituted absolution of law enforcement agents and rendered his statement admissible.

*Edwards* and *Smith,* as we have seen, interpret the Fifth Amendment to require that law enforcement agents, after the right to counsel has been invoked, refrain from interrogating a suspect in custody until counsel has been made available. Following arraignment, moreover, the Sixth Amendment guarantees an accused the right to rely on counsel as a medium between him and the State. *Michigan v. Jackson, supra* —— U.S. at ——, 106 S.Ct. at 1407–1408, 89 L.Ed.2d at 638–639; *Maine v. Moulton, supra* —— U.S. at ——, 106 S.Ct. at 479, 88 L.Ed.2d at 492.

In the instant case, the trial court found that Hackney's Fifth Amendment guarantee against self-incrimination had been abridged by law enforcement personnel. The evidence supports the trial court's findings. The same findings demonstrate that Hackney's Sixth Amendment right to counsel was also violated. Police refusals to provide counsel despite repeated requests for counsel, made by appellee, by his parents, and by the public defender who interviewed him, require the suppression of statements thereafter made. Hackney could not be deprived of the right to counsel by the conduct indulged in by law enforcement agents in this case.

Order affirmed.