516 A.2d 1257

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Andrew HUNSBERGER.**

Superior Court of Pennsylvania.

Argued June 17, 1986.

Filed Nov. 3, 1986.

Stephen B. Harris, Assistant District Attorney, Warrington, for Com., appellant.

Robert W. Suter, Assistant Public Defender, Doylestown, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH and TAMILIA, JJ.

TAMILIA, Judge:

A complaint was filed against appellee charging him with first degree murder in the death of his mother, Carol Hunsberger. Subsequently, trial counsel for appellee filed notice of appellee's plans to assert the insanity and mental infirmity defense. After a pre-trial suppression hearing, the lower court granted appellee's omnibus pre-trial motion to suppress certain statements voluntarily uttered by the appellee after *Miranda*[1] warnings and his request for counsel were made, but before appellee's first meeting with counsel. The matter before this Court is the appellant's interlocutory appeal from the suppression Order.

Appellee claims that the Commonwealth has failed to assert jurisdictional grounds for this appeal and that the Commonwealth must demonstrate that the evidence suppressed by the trial court substantially handicaps the Commonwealth's prosecution of this case. We disagree. As this Court stated in *Commonwealth v. Benjamin,* 346 Pa.Super. 116, 121–122, 499 A.2d 337, 339 (1985):

> In *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985), our Supreme Court held that the Commonwealth's appeal from a suppression order was proper as long as the Commonwealth certified in good faith that the order either 'terminates' or 'substantially handicaps' the prosecution. The good faith certification is a precaution to meritless appeals designed solely for delay. It is no longer necessary for this Court to make an independant determination from the record whether the suppression order 'terminates' or 'substantially handicaps' the prosecution.

Since the certification requirement has been satisfied, we find that the Commonwealth has an absolute right of appeal

---

[1]. *Miranda v. Arizona,* 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966).

to this Court to test the validity of the pre-trial suppression Order.

▮ Our standard of review in an appeal from a suppression Order is limited to determining whether the factual findings of the suppression court are supported by the record and whether the legal conclusions drawn therefrom are in error. *Commonwealth v. Webb*, 491 Pa. 329, 334, 421 A.2d 161, 163 (1980); *Commonwealth v. Hubble*, 318 Pa.Super. 76, 78, 464 A.2d 1236, 1237 (1983).

The parties stipulated that the statements suppressed were made voluntarily by the appellee after he was read *Miranda* warnings, had answered that he wished to remain silent, and had answered that he wanted an attorney present during questioning. After the appellee's response to the *Miranda* warnings was made, the appellee was not subjected to further questioning. The appellant has conceded that those remarks made by appellee immediately following the administration of *Miranda* warnings concerning his desire to speak to an attorney were inadmissible. However, the appellant maintains that the court below erred in suppressing the following statements:

1. The appellee's question to First District Attorney Alan Rubenstein after being advised that he would be able to receive a public defender, "Are public defenders as good as money lawyers?";

2. The appellee's question to District Justice Kathryn Stump at the time of his preliminary arraignment in which he asked, "How can I get to see the public defender on the sixth floor of the courthouse if I am in jail?"; and

3. The appellee's question to Deputy District Attorney Rea Mabon when she approached him in the Dublin Barracks of the Pennsylvania State Police as to whether she was his lawyer, and when she replied in the negative, his statement that he did not want to speak to her.

The importance of the statements becomes apparent when viewed in light of the appellee's raising the insanity defense and the subsequent burden this places on the Common-

wealth to prove the appellee's sanity beyond a reasonable doubt. *Commonwealth v. Bruno,* 466 Pa. 245, 352 A.2d 40 (1976). The Commonwealth asserts that the statements are highly probative of the appellee's state of mind immediately following the crime.

■ Appellant claims that because the statements in question were made voluntarily by the appellee after his arrest and after *Miranda* warnings were administered, no violation of appellee's constitutional rights would occur if the statements were admitted at trial. We find we must disagree with appellant and affirm the lower court's suppression of the statements to avoid infringing appellee's fifth Amendment protection against compelled self-incrimination which provides the right to counsel during custodial interrogation. *Commonwealth v. Hackney,* 353 Pa.Super. 552, 558, 510 A.2d 800, 803 (1986).

In *Doyle v. Ohio,* 426 U.S. 610, 611, 96 S.Ct. 2240, 2241-42, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that silence in the wake of *Miranda* warnings may be nothing more than the arrestee's exercise of his *Miranda* rights and that because such silence is "insolubly ambiguous", it cannot be used for impeachment purposes at trial. It is the implicit assurance the *Miranda* warnings carry, "that silence will carry no penalty", which is the source of the *Doyle* Court's holding that use of an arrestee's silence is fundamentally unfair and therefore violates the Due Process Clause of the Fourteenth Amendment. *Id.* at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 422. Recently, the Supreme Court has held that it is fundamentally unfair for the prosecution to use a defendant's post-arrest and post-*Miranda* warnings silence as evidence of his sanity. *Wainwright v. Greenfield,* 474 U.S. 284, ——, 106 S.Ct. 634, 640-41, 88 L.Ed.2d 623, 632 (1986).

In *Wainwright,* the Court ruled that the *Doyle* due process rationale applies to an insanity defense situation in which the prosecution attempts to use the post-arrest and post-*Miranda* warnings silence as affirmative proof of sanity in the case in chief. *Id.* at ——, 106 S.Ct. at 638-39, 88

L.Ed.2d at 630. The *Wainwright* Court stated that the fundamental unfairness found to exist in *Doyle,* that a promise that silence will not be used against an arrestee and the subsequent breach of that promise by using silence to impeach his trial testimony, exists when a breach of that promise is used to overcome the insanity defense. *Id.* at ——, 106 S.Ct. at 639–40, 88 L.Ed.2d at 631. The significance of the majority Opinion in *Wainwright* does not rest solely on the Supreme Court's application of the *Doyle* due process rationale to the prosecution's use of an arrestee's silence as proof of sanity, but also rests on the Court's comment that an arrestee's constitutional right to consult counsel cannot be used against him after assurance by the state that his exercise of that right will not be so used. *Id.* at ——, 106 S.Ct. at 640–41, 88 L.Ed.2d at 632. The *Wainwright* court stated that:

> [T]he State's legitimate interest in proving that the defendant's behavior appeared to be rational at the time of his arrest could have been served by carefully framed questions that avoided any mention of the defendant's exercise of his constitutional rights to remain silent *and to consult counsel.* What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized. *Id.* (Emphasis added)

Therefore, we find that the Court should suppress post-arrest and post-*Miranda* warnings statements made by the appellee concerning his right to counsel and questioning the meaning of his *Miranda* rights.

The cases relied upon by the appellant are distinguishable from the present case because they do not deal with post-*Miranda* statements by an arrestee concerning his right to counsel, but instead deal with voluntary statements concerning the commission of the crime in question. For example, *Commonwealth v. Hubble,* 509 Pa. 497, 514, 504 A.2d 168, 174 (1986), involved self-incriminating statements pertaining to the crime itself, voluntarily given by the defendant after a written waiver of his *Miranda* rights, not

statements concerning the defendant's right to counsel. Appellant quoted the *Hubble* court as stating:

> To hold that every utterance of the word 'lawyer' automatically erects the *Edwards* 'cone of silence' around the accused, thus insulating him from all further police-initiated questioning and communication, would be far too rigid and would not serve the interests or needs of justice.

*Id.,* 509 Pa. at 511, 504 A.2d at 173. Use by appellant of the above quoted comment and its referral to *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *reh'g denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), is inapposite to this case as the issue in *Hubble, supra,* was whether the accused had invoked his right to counsel before making inculpatory statements, not whether the statements made by the accused were an effort on his part to understand the meaning of his right to counsel. As we have stated, it was stipulated by appellant that appellee invoked his right to counsel.

For the above stated reasons, we affirm the suppression Order entered by the lower court.

Order affirmed.

CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge, dissenting:

I respectfully dissent.

It is well settled that upon arrest, the police must inform an accused person of his rights. In order to protect the suspect's privilege against self-incrimination, the police must tell him that he has a right to remain silent, that any statement he does make may be used as evidence against him and that he has a right to the presence of an attorney either retained or appointed. *Miranda v. Arizona,* 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966).

The Supreme Court has also emphasized that the police may not question the accused if he indicates that he wishes to speak to an attorney. Nor can they question him if he

states that he does not want to be interrogated. *Id.* at 470–73, 86 S.Ct. at 1625–27. If the police violate these procedural safeguards, any statements they have obtained will be inadmissible at trial. *Id.* at 475, 86 S.Ct. at 1628.

However, *Miranda* applies only to statements made as a result of police interrogation. Any statement spontaneously volunteered by an accused is admissible even if he has previously asserted his *Miranda* rights. *Commonwealth v. Scarborough*, 491 Pa. 300, 313, 421 A.2d 147, 153 (1980); *Commonwealth v. Myers*, 481 Pa. 217, 392 A.2d 685 (1978).

In the instant case, both parties have stipulated that the statements in question were voluntary, spontaneous utterances and were not made in response to police interrogation. Therefore, the accused's statements should be admissible. However, the appellee contends that the recent case of *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 639, 88 L.Ed.2d 623 (1986) compels a different result. However, the facts in this case are totally dissimilar from those of *Wainwright.* Also, the rationale used by the *Wainwright* Court does not apply to the situation before us. In fact, by virtue of its holding today, this panel establishes a dangerous precedent which is sure to confuse and hamstring law enforcement officials and trial courts in the pursuit of their duties.

As noted above, under *Miranda* and its progeny, the general rule is that voluntary, spontaneous statements are admissible at trial even if an accused has stated that he intends to remain silent. In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Court held that silence cannot be used against an accused. In *Wainwright,* the Court interpreted its *Doyle* holding as preventing use of an accused's silence to show that he was not insane at the time of the crime.

In *Wainwright,* the Court, per Justice Stevens, stated: "With respect to post-Miranda warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consult-

ed." *Id.* 474 at ——, 106 S.Ct. at 640–41, 88 L.Ed.2d at 632 n. 4b.

Justice Stevens provided two rationales to support the Court's holding. He stated that the use of a defendant's silence is fundamentally unfair because it violates an implied promise by the government. Justice Stevens wrote that:

Miranda warnings contain an implied promise, rooted in the Constitution that 'silence will carry no penalty.' Our conclusion [is] that it [is] fundamentally unfair ... to breach that promise by using the defendant's post-arrest, post-Miranda warnings silence ... as evidence of his sanity.

*Id.* at ——, 106 S.Ct. at 641, 88 L.Ed.2d at 632. (Citations omitted).

The Court also noted that silence is "insolubly ambiguous" and thus its probative value is outweighed by the "fundamental unfairness that flows from the State's breach of its implied assurances." *Id.* at ——, ——, 106 S.Ct. at 640, 88 L.Ed.2d at 631–32. The Court quoted the Florida Supreme Court's view of the probative value of silence in an insanity context.

Post-arrest, post-Miranda silence is deemed to have dubious probative value by reason of the many and ambiguous explanations for such silence.... For example, one could reasonably conclude that custodial interrogation might intimidate a mentally unstable person to silence. Likewise, an emotionally disturbed person could be reasonably thought to rely on the assurances given during a Miranda warning and thereafter choose to remain silent. In sum, just what induces post-arrest, post-Miranda silence remains ... a mystery.... Silence in the face of accusation is an enigma....

*Wainwright,* 474 U.S. at —— n. 11, 106 S.Ct. at 640 n. 11, 88 L.Ed.2d at 631–32 n. 11 (citations omitted), (quoting *State v. Burwick,* 442 So.2d 944, 948 (Fla.1983)).

Based upon the foregoing rationales, the *Wainwright* Court carved out a limited exception to the general admissi-

bility of voluntary, spontaneous statements. This exception applies to "the statement of a desire to remain silent, as well as a statement of a desire to remain silent until an attorney has been consulted." *Wainwright*, 474 U.S. at ——, 106 S.Ct. at 640–41, 88 L.Ed.2d at 632 n. 4b. Appellee's statements went far beyond the parameters of these limited exceptions. He questioned the quality of public defenders, whether a particular individual was his attorney, and whether consultation with his attorney would be logistically possible. These rather complex inquiries bear little resemblance to the *Wainwright* exceptions. Appellee's question concerning the quality of public defenders cannot possibly be interpreted as a "statement of a desire to remain silent." *Id.*

Nor do the *Wainwright* rationales support extending that case's holding to include situations such as this. Justice Stevens stated that use of a defendant's silence is fundamentally unfair because it violates an implied promise by the government that silence will cause no penalty. *Id.* at ——, 106 S.Ct. at 640–41, 88 L.Ed.2d at 632. However, the government has made no implied promise that the defendant is entitled to do anything but remain silent or indicate that he intends to exercise his right to do so. Any other statements made by an accused are made at his own risk. The *Wainwright* Court's decision was logical because if an accused wishes to see an attorney he must somehow communicate that desire. A suspect's right to remain silent until counsel arrives would be totally meaningless if he could not communicate his wishes without fear of self-incrimination. A right which cannot be exercised without penalty protects no one. However, an accused can effectively exercise his right to counsel without questioning the police about the entire nature of the attorney-client relationship. The accused has no constitutional right to demand that the police engage in a comparative analysis of attorney qualifications. Nor does he have a constitutional right to a logistical explanation of how and when he will meet with his attorney. Nor does he have a constitutional right to inquire

into the background of each person who passes by while he's waiting in the stationhouse.

An accused's statements do not receive constitutional protection because they include a reference to lawyers. As the Pennsylvania Supreme Court has stated:

> To hold that every utterance of the word "lawyer" automatically erects [a] 'cone of silence' around the accused ... would be far too rigid and would not serve the interests or needs of justice.

*Commonwealth v. Hubble*, 509 Pa. 497, 511, 504 A.2d 168, 175 (1986).

The majority correctly notes that *Hubble* is not controlling of the instant case but it certainly is instructive. The *Hubble* Court recognized that there is no constitutional principle affording protection to all statements containing the word lawyer. Reduced to its bare essentials, that is the very argument made by the appellee. He has demonstrated no other reason why his statements should receive constitutional protection. They were not an invocation of his right to counsel nor were they necessary for the effective exercise of that right. Appellee's statements were nothing more than inquiries into the attorney-client relationship. This Court has today recognized a constitutional right to investigate your attorney's background and qualifications. I doubt that Justice Stevens intended such an expansive interpretation when he wrote that "silence does not mean only muteness." In the future, Pennsylvania law enforcement officials and trial judges will have little idea as to when an accused's statements shed the cloak of silence and lose constitutional protection. If "silence" includes questioning of whether a public defender is as qualified as a private attorney, does it also include inquiries into the attorney's law school background, class rank, professional honors, publications and income? Denying an accused constitutional protection for these types of statements hardly rises to the level of fundamental unfairness cited by the *Wainwright* Court.

Nor were appellee's statements "insolubly ambiguous". There is no ambiguity in a straightforward inquiry into the qualifications of the public defender. Appellee's statement exhibits concern over whether he will receive effective representation. Though this is certainly not conclusive proof of sanity, it demonstrates coherent, rational thought and is highly relevant where the plea is based on insanity.

The *Miranda* Court intended to safeguard the right of innocent persons. Towards that end, the Court afforded accused persons a two-pronged protection. The Court required that police inform suspects of their constitutional rights and the court protected arrestees from coercive police techniques. It is often forgotten that in *Miranda*, the indigent Mexican defendant was seriously disturbed and was never informed of his rights. Yet, the prosecution miraculously produced a typed and signed confession stating that he understood his rights and had voluntarily waived them. This voluntary waiver occurred after a long period of isolation in a special police interrogation room. The Court's decision was in reaction to this obvious abuse of police power.

The *Miranda* Court also catalogued some of the techniques used by police to coerce confessions from suspects. *Miranda* 384 U.S. at 446–455, 86 S.Ct. at 1613–18. The Court noted that police had sometimes used "physical brutality—beating, hanging, whipping ... in order to extort confessions." *Id.* at 446, 86 S.Ct. at 1613. The Court also discussed the use of isolation, legal misstatements and trick line-ups. The Court described these psychological pressures as "[psychological] intimidation ... destructive of human dignity." *Id.* at 457, 86 S.Ct. at 1619. However, appellee admits that his statements were not coerced and the record does not contain even a hint of psychological intimidation by the police. Also, appellee's own statements show that he understood his rights. He questioned whether the public defender was as qualified as a private attorney and where he could meet with his attorney. These are not the statements of a person who does not realize that he has

the right to an attorney. Appellee's questions show that he not only understood his rights but was busy scheming as to the best way to utilize them.

The *Miranda* Court was careful to note that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Id.* at 478, 86 S.Ct. at 1630. The Court did not intend to turn law enforcement into a contest of technicalities. The Court wished only to protect innocent persons against the evils enumerated above. In the ensuing years, courts have lost sight of the policies underlying *Miranda*. Some decisions have forced law enforcement officials to battle the very legal system they are supposed to serve in order to convict guilty offenders. I am saddened to say that today's decision by this panel continues this unfortunate distortion of *Miranda*. Appellee admits that he is guilty as charged and that the statements in question were voluntarily made, yet, this panel requires those statements be held inadmissible.

The *Miranda* Court stated that it did not wish to "constitute an undue interference with a proper system of law enforcement." *Id.* at 481, 86 S.Ct. at 1631. Unfortunately, today's decision cannot help doing just that. It is a completely unwarranted deviation from the long-standing principle that voluntary statements are admissible.

Accordingly, I must dissent.