534 A.2d 541

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James CONWAY, Appellee.**

Superior Court of Pennsylvania.

Argued June 15, 1987.

Decided Oct. 23, 1987.

Reargument Denied Dec. 28, 1987.

Stuart B. Suss, Assistant District Attorney, West Chester, for Com.

Paul J. Rubino, Paoli, for appellee.

Before MONTEMURO, KELLY and CERCONE, JJ.

MONTEMURO, Judge:

The Commonwealth appeals from an oral suppression order issued by the Chester County Court of Common Pleas on September 23, 1986. The court found inadmissible the audio portion of a video tape of appellee performing sobriety tests after he had been arrested for driving while under the influence. We affirm.

■ Prior to reviewing the suppression order, we must determine whether it is appealable. In *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), our Supreme Court held that the Commonwealth may appeal a suppression order as long as the Commonwealth certifies in good faith that the suppression order substantially handicaps or terminates the prosecution. *Id.*, 506 Pa. at 545, 486 A.2d at 386. A prosecution is substantially handicapped whenever "the Commonwealth is denied the use of *all* their evidence," *id.* The Commonwealth's certification is "not contestable," and "[i]t, in and of itself, precipitates and authorizes the appeal." *Id.* *See also Commonwealth v. Hunsberger*, 358 Pa.Super. 207, 516 A.2d 1257 (1986) ("*Dugger* rule" applied). In the case before us, the Commonwealth has satisfied the certification requirement. We therefore find that the Commonwealth has an absolute right of appeal to this Court to challenge the validity of the September 23, 1986 suppression order. We now turn to the merits of the Commonwealth's claims.

Appellee James Conway was arrested on the morning of February 12, 1986. A police officer had been called to the scene and had observed Mr. Conway seated in his car, which was stuck in a snowbank on the side of the road. Mr. Conway was attempting to free the car from the snowbank. As the officer approached the car, he noticed that Mr. Conway appeared intoxicated. He also smelled alcohol. The patrolman attempted to administer two field sobriety tests, the horizontal gaze nystagmus [1] and the one-leg stand. The officer concluded that appellee was incapable of completing the horizontal gaze nystagmus test. Because the road was snow-covered, the officer felt that the road conditions were too dangerous to administer any other sobriety tests. He then arrested Mr. Conway for driving under the influence of alcohol and took him to the police station.

At the station, the police informed appellee of his *Miranda* rights and of the Implied Consent Law. [2] Mr. Conway stated that he did not wish to speak to the officer and refused any chemical testing of his blood. He attempted to contact his attorney but was unsuccessful. The police then videotaped Mr. Conway. On camera, Mr. Conway was again advised of his *Miranda* rights, and he again invoked his right to remain silent and his right to counsel. He was then filmed performing three sobriety tests. As he performed the tests, Mr. Conway spoke only in order to get

1. To administer the horizontal gaze nystagmus test, the police officer faces the subject. The officer then holds an object such as a pen or a pointer directly in front of the subject's face and asks the subject to keep his head still while following the object with his eyes only. The officer then moves the object from side to side on a horizontal plane. The procedure tests the subject's ability to focus.

2. 75 Pa.C.S. § 1547 (1987). The statute provides in pertinent part that (a) General Rule. Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood ... if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle: (1) while under the influence of alcohol.... 75 Pa.C.S. § 1547(a) (1987).

occasional clarification concerning the officer's oral instructions. The officer also requested Mr. Conway to count from 1,001 to 1,030 while balancing on one leg. After Mr. Conway had completed the tests, the police officer asked him questions, including how much and what he had drunk prior to his arrest.

The suppression court concluded that the sound portion of the tape, in conjunction with the video, would both mislead the jury and violate appellee's privilege against self-incrimination. Accordingly, the court proposed that a police officer give a "voice over" to explain the film while only the video portion of the tape be shown to the jury. The officer could also comment on whether he thought appellee had passed the tests.

The Commonwealth argues that the audio tape should not be suppressed on the ground that it would mislead the jury because the jury is capable of analyzing such evidence. Additionally, the Commonwealth concedes now, as it did at the suppression hearing, that both appellee's filmed invocation of his right to remain silent and the post-test questioning by the police officer are inadmissible. However, it argues that appellee's "utterances" during the course of the tests were neither testimonial nor compelled and are, therefore, not protected by the privilege against self-incrimination. The Commonwealth maintains that because it seeks to introduce the audio portion of the videotape only to demonstrate appellee's symptoms of intoxication, *not* for the substantive content of the words, the suppression court erred in excluding the audio portion of the tape based on appellee's Fifth Amendment rights.

This appeal, therefore, presents one issue: did the trial court err when it suppressed the audio portion of the tape containing appellee's spoken words, which were recorded while he performed the sobriety tests? [3] We have viewed

3. Because neither party challenges the admissibility of the video portion of the tape, we are not called upon to make a judgment concerning the utility of this type of demonstrative evidence. We are, however, troubled by this "advance" in technology. We question whether such evidence is necessary in drunk driving cases since,

the tape both with and without sound. Because we find that admitting the audio portion of the tape would be both more misleading than probative and would contravene appellee's constitutional right against self-incrimination, we affirm the order of the trial court.

The court of common pleas determined that the sound portion of the tape could mislead the jury and would thus have a prejudicial impact on appellee's case. Because this appeal challenges a suppression order, we are cognizant of our narrow scope of review. The trial court has "broad discretion as to the manner in which a trial is to be conducted, particularly with regard to the admission or exclusion of evidence." *Commonwealth v. Lumpkins,* 324 Pa.Super. 8, 14, 471 A.2d 96, 99 (1984). Relevancy is, of course, a basic requirement for the admissibility of any evidence in a criminal trial. *Id.* However, not all relevant evidence is

usually, the police officer who administered the sobriety tests can testify with regard to the subject's physical coordination. Because there is a great likelihood of prejudice to a defendant from such evidence, the *video* tape is more than merely a cumulative piece of evidence corroborating the administering officer's testimony.

We note that had Mr. Conway challenged the admissibility of the *video* tape, as well as of the *audio* tape, the suppression court would apply the general two-step test to determine the admissibility of such demonstrative evidence. First, the court determines whether the evidence is inflammatory in nature. If the evidence is inflammatory, the court then decides whether the evidence is of "essential evidentiary value" such that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *See Commonwealth v. Groff,* 356 Pa.Super. 477, 481, 514 A.2d 1382, 1384 (1986) (and cases cited therein). *See also* our discussion at pages 543 through 544 of the text.

The privilege against self-incrimination ordinarily presents no barrier to admission of demonstrative or physical evidence such as a *video* tape. A visual recording of a suspect's legally compelled actions, though perhaps highly incriminating, would not, in general, constitute communicative or testimonial evidence. It therefore would not be protected by the privilege against self-incrimination. *See Schmerber v. California,* 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1831–32, 16 L.Ed.2d 908 (1966) (courts have usually held that the protection of the privilege does not extend to compulsory fingerprinting, photographs, measurements, writing or speaking for identification, appearing in court, assuming a particular stance, walking or making a particular gesture because the privilege is not violated by compulsion which makes a suspect the source of physical evidence).

admissible, and a trial court may exercise its discretion to exclude relevant evidence that "may confuse, mislead or prejudice the jury," *id.*, 324 Pa.Superior Ct. at 15, 471 A.2d at 100. *See also Commonwealth v. Ulatoski,* 472 Pa. 53, 63 n. 11, 371 A.2d 186, 191 n. 11 (1977) ("[a]ll evidence, even when determined to be relevant, is inadmissible if the trial court, in its discretion, determines that its prejudicial impact outweighs its probative value"). *Accord: Commonwealth v. Story,* 476 Pa. 391, 402, 383 A.2d 155, 160 (1978); *Commonwealth v. Hickman,* 453 Pa. 427, 434, 309 A.2d 564, 568 (1973); *Commonwealth v. Costal,* 351 Pa.Super. 200, 203, 505 A.2d 337, 338 (1986); *Commonwealth v. Lumpkins, supra; Commonwealth v. Krajci,* 283 Pa.Super. 488, 495, 424 A.2d 914, 917 (1981). Of course, most of the evidence offered by the prosecution in a criminal case will prejudice the defendant. *Commonwealth v. Dollman,* 355 Pa.Super. 108, 114, 512 A.2d 1234, 1237 (1986) (citing McCormick, *Handbook of the Law of Evidence,* § 185 (2d ed. 1972)). *Accord: Commonwealth v. Green,* 477 Pa. 170, 176, 383 A.2d 877, 880 (1978). The inquiry therefore is whether the evidence is so prejudicial that it "may inflame" the jury to make a decision based upon "something other than the legal propositions relevant to the case." *Commonwealth v. Shain,* 324 Pa.Super. 456, 464, 471 A.2d 1246, 1249 (1984); *see also Commonwealth v. Hodge,* 270 Pa.Super. 232, 242, 411 A.2d 503, 508 (1979) (evidence is overly prejudicial if it results in the "jury being so aroused as to be unable to decide the case in an impartial manner"). If evidence is potentially inflammatory, the court, in making its determination of admissibility, must weigh the inflammatory nature of the evidence against its "essential evidentiary value." *Commonwealth v. Pifer,* 284 Pa.Super. 170, 181, 425 A.2d 757, 762 (1981). *See also Commonwealth v. McCutchen,* 499 Pa. 597, 602, 454 A.2d 547, 549 (1982); *Commonwealth v. Martinez,* 475 Pa. 331, 380 A.2d 747, 750 (1977); *Commonwealth v. Petrakovich,* 459 Pa. 511, 521, 329 A.2d 844, 849 (1974). A piece of evidence is of essential evidentiary value if the need for it clearly outweighs the likelihood of it inflaming the minds and passions of the jurors. *Id.* Be-

cause rulings on the admission of evidence rest within the sound discretion of the trial court, we will not reverse the trial court's decision absent a manifest abuse of discretion. *Commonwealth v. Lumpkins, supra* 324 Pa.Super. at 15, 471 A.2d at 100.

In limiting the admissibility of the tape to the video portion only, the suppression court determined that the audio portion of the tape was misleading and potentially prejudicial because Mr. Conway, in response to the officer's instructions, asks a series of questions, some of them "arguably incriminating." [4] Additionally, Mr. Conway's questions demonstrate some confusion which the jury might conclude, precipitously, was due to intoxication rather than due to the equally plausible nervousness generated by the arrest. *See* T.Ct.Op. at 9–10. The Commonwealth asserts, however, that "it is precisely the function of the jury to weigh the evidence and characterize it consistent with the charge of the court concerning the weight and credibility of all forms of evidence presented to them." Appellant's Brief at 15. While we agree with the Commonwealth's general proposition, we reiterate that questions involving whether certain kinds of evidence should even reach the jury are left to the broad discretion of the trial court.

In the case before us, we agree with the suppression court and find that the probative value of the visual recording of Mr. Conway performing the sobriety tests, when coupled with the audio portion of the tape, is outweighed by its prejudicial impact. When the videotape is viewed in conjunction with the sound, it is apparent that Mr. Conway is crying. He also asks numerous questions to clarify the instructions read to him by the officer. The evidence, with the sound included, is highly inflammatory. The jury is likely to jump to the immediate conclusion that Mr. Conway was drunk when he took the tests, without considering other reasonable explanations for Mr. Conway's behavior.

4. For instance, after the officer administered the horizontal gaze nystagmus test, Mr. Conway asked, "Did I pass?" N.T., September 23, 1986, at 20.

As the suppression court noted, Mr. Conway may have been exhibiting a natural nervousness stemming from the trauma of the arrest. Equally plausible, Mr. Conway may have been distracted by the camera or shamed by the arrest and further humiliated by being taped. Mr. Conway's answers to the post-test questions also reveal that he had slept only five hours the night before his arrest. Fatigue can often manifest itself in confusion.

When evidence is inflammatory, the court must determine its essential evidentiary value. In this case, Mr. Conway has been charged with driving under the influence of alcohol pursuant to 75 Pa.C.S. § 3731(a)(1) (1987). Therefore, the Commonwealth must prove that Mr. Conway was "operating a motor vehicle ... while under the influence of alcohol to a degree which rendered him incapable of safe driving." *Commonwealth v. Griscavage*, 512 Pa. 540, 544, 517 A.2d 1256, 1258 (1986); 75 Pa.C.S. § 3731(a)(1).[5] The audio portion of the tape does not possess essential evidentiary value in relation to the Commonwealth's burden. The jury's primary inquiry is to determine whether the faculties that were essential to enable Mr. Conway to operate an automobile safely were substantially impaired by alcohol. *See Commonwealth v. Bruder*, 365 Pa.Super. 106, 112, 528 A.2d 1385, 1390 (1987), *allocatur pending* (No. 650 E.D.Allocatur Docket, 1987), slip op. at 11. Mr. Conway's physical state has an arguably higher correlation to his ability to operate an automobile safely than does his ability to understand the instructions given to him by the officer. The video portion of the tape allows the jury to view Mr. Conway's physical state. In addition to being able to watch Mr. Conway's performance on the sobriety tests, which is perhaps the best indicator of Mr. Conway's possible physical impairment due to alcohol, they will see his bloodshot eyes and his generally disheveled appearance. Moreover,

5. Mr. Conway was also charged with violating 75 Pa.C.S. § 3731(a)(4), which would require the Commonwealth to prove that Mr. Conway was operating a motor vehicle and that his blood-alcohol content was at least 0.10%. *Commonwealth v. Speights*, 353 Pa.Super. 258, 262, 509 A.2d 1263, 1265 (1986). However, Mr. Conway refused to submit to any testing of his blood-alcohol level.

the officer may comment on Mr. Conway's demeanor, his ease of speech and understanding, and his performance on the tests. The Commonwealth's need for the audio portion of the tape does not outweigh the likelihood that the evidence will inflame the jury. The audio portion of the tape therefore lacks the essential evidentiary value required to make it admissible despite its inflammatory nature.

Also compelling the affirmance of the court of common pleas' order is our agreement with the trial court's determination that the audio portion of the tape contravenes Mr. Conway's privilege against self-incrimination. We note that Pennsylvania courts have held that "[r]equiring a driver to perform physical tests ... does not violate the privilege against self-incrimination because the evidence procured is of a physical nature rather than testimonial, and therefore, no *Miranda* warnings are required." *Commonwealth v. Benson*, 280 Pa.Super. 20, 29, 421 A.2d 383, 387 (1980). *See also Commonwealth v. Kloch*, 230 Pa.Super. 563, 572, 327 A.2d 375, 381 (1974). Field sobriety tests are not testimonial because they "merely require a driver to exhibit his or her physical coordination." *Commonwealth v. Romesburg*, 353 Pa.Super. 215, 221, 509 A.2d 413, 416 (1986). The privilege against self-incrimination, therefore, presents no impediment to admission of the video portion of the tape. However, the admission of appellee's verbal statements made during the physical tests does present a conflict with this privilege.

■ The privilege, set forth in the Fifth Amendment to the United States Constitution, "protects an accused only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966). *See also Commonwealth v. Fernandez*, 333 Pa.Super. 279, 284, 482 A.2d 567, 569 (1984) (quoting *Holt v. United States*, 218 U.S. 245, 252–53, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910) (Holmes, J.)) (the privilege prohibits using moral or physical compulsion to extort communications from an accused but does not

prohibit the use of an accused's "body when it may be material"). Pennsylvania appellate courts have held that Article I, section 9 of the Pennsylvania Constitution offers a protection against self-incrimination identical to that provided by the Fifth Amendment. *See Commonwealth v. Romesburg, supra.* To decide whether appellee's statements are protected under the state or federal constitutions, we use the same analysis: we engage in a two-part inquiry to determine whether the statements were both testimonial and compelled.

Testimonial evidence is "communicative evidence as distinguished from demonstrative or physical evidence," *Commonwealth v. Fernandez, supra,* 333 Pa.Super. at 284, 482 A.2d at 569. The line between physical or demonstrative evidence, on the one hand, and testimonial or communicative evidence, on the other, is a blurred one. *See South Dakota v. Neville,* 459 U.S. 553, 561, 103 S.Ct. 916, 921, 74 L.Ed.2d 748 (1983) (case involving the admission into evidence of a refusal to take a blood-alcohol test). Mr. Conway was required to give more than physical evidence when he demonstrated his physical coordination on the sobriety tests. The test procedure was structured so that Mr. Conway was compelled to reveal his thought processes by asking for clarification of some of the officer's instructions, and his statements in response thereto manifest his confusion. Because confusion is arguably a sign of intoxication, Mr. Conway was forced to incriminate himself by "communicating" his confusion while performing the tests. We therefore conclude that Mr. Conway's statements were testimonial.

Our recent decision in *Commonwealth v. Bruder, supra,* supports our determination that the statements made by Mr. Conway during the videotaping of his sobriety test performance, which the Commonwealth now seeks to introduce as evidence of his intoxication, are testimonial. In *Bruder,* the police observed the accused as he ran a red light and drove his car erratically. The officer stopped Mr. Bruder and noted signs of intoxication. The patrolman

instructed Mr. Bruder to perform a physical field sobriety test and also to recite the alphabet. After failing both of these tests, Mr. Bruder was arrested for driving under the influence of alcohol and was given his *Miranda* warnings. Mr. Bruder challenged the trial court's finding of guilty by arguing in post-trial motions that certain statements he had made to the police officer, including his recitation of the alphabet, were testimonial and should have been suppressed at trial because they were made before he had been advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This Court agreed with Mr. Bruder. We concluded that, although he was not under formal arrest when he made his statements, Mr. Bruder had been subjected to custodial interrogation. Moreover, this Court determined that the recitation of the alphabet is "essentially communicative in nature" and, therefore, should have been excluded from evidence since it was elicited before Mr. Bruder had received his *Miranda* warnings. *Bruder, supra,* 365 Pa.Super. at 111, 528 A.2d at 1388.

In the case before us, Mr. Conway had been arrested and had invoked his right to remain silent. He never waived that right. Any compelled, testimonial statements made by him are protected by the privilege against self-incrimination. Using a *"Bruder* analysis," we find that Mr. Conway's statements are testimonial. In *Bruder,* the manner in which the accused recited the alphabet was offered by the Commonwealth as evidence of his intoxication. In the case before us, the Commonwealth seeks to introduce Mr. Conway's statements for the same reason that the recitation was offered in *Bruder.* The Commonwealth asserts that the "evidentiary value is not in the substantive content of those utterances, but solely in the manner in which defendant expressed himself." Appellant's Brief at 11. That Mr. Conway's statements are communicative cannot be questioned in light of our conclusion that Mr. Bruder's recitation of the alphabet was communicative. Mr. Bruder was told by the police exactly what to say while *the*

*content* of Mr. Conway's statements was more within his volitional control. By seeking clarification of the police officer's instructions, Mr. Conway expressed his thought processes far more than did Mr. Bruder in his recitation. There is a greater communicative or testimonial aspect in Mr. Conway's statements than in Mr. Bruder's recitation. We must therefore conclude that Mr. Conway's statements are testimonial.

We turn to the second part of our two-part inquiry to determine whether Mr. Conway's statements were compelled by police conduct. The Commonwealth argues that Mr. Conway's statements were voluntary. We disagree. If a testimonial statement is given "freely and voluntarily without any compelling influences," it is admissible, *Commonwealth v. Sero*, 478 Pa. 440, 453, 387 A.2d 63, 70 (1978). *See also Commonwealth v. Bracey*, 501 Pa. 356, 367, 461 A.2d 775, 780 (1983) (quoting *Sero, supra* ). However, if police conduct is "*likely* or expected *to elicit* a confession or other *incriminating statements*," *Miranda* warnings are required. *Id.* (emphasis added). If the accused, like Mr. Conway, does not waive the privilege against self-incrimination, any testimonial statements obtained as a result of police conduct likely to elicit incriminating statements are inadmissible at trial. At the taping of Mr. Conway's performance on the sobriety tests, the police officer administering the tests explained [6] each test to Mr. Conway before making him physically perform the test. He asked Mr. Conway after each instruction whether he understood what he was supposed to do. *See* N.T., September 23, 1986, at 22, 23, 24. In response to these questions, Mr. Conway

6. The police officer read the test instructions in a monotone. He used little, if any, inflection or intonation. Some of the instructions were confusing. For instance, the officer explained the "walk the line" balancing test as follows:

Take nine heel to toe steps on the line, keeping your feet on the line. When you get to the 9th step, pivot on your lead foot, keeping your lead foot on the line, taking several small steps on your lead foot, such as this [officer demonstrates], and turn around. Then you'll take nine more heel to toe steps back to the starting position. Understand that?

N.T., September 23, 1986, at 21.

answered by stating what he understood the instructions to be, or he asked for further clarification. The conduct of the police officer elicited testimonial statements from Mr. Conway that the Commonwealth now seeks to use against him. Additionally, the situation itself compelled Mr. Conway to make his statements seeking clarification. Because he was being taped, Mr. Conway was pressured to perform the tests correctly to prevent further embarrassment and to avoid making mistakes that would surely be used against him at trial. We therefore conclude that the statements made by Mr. Conway during the taping were both legally compelled and testimonial. Because he had not waived his right against self-incrimination, Mr. Conway may now invoke the protection of the state and federal constitutional provisions against self-incrimination. His statements, recorded on the audio portion of the videotape, are inadmissible at trial.

Order affirmed.

KELLY, J., files a concurring statement.

KELLY, Judge, concurring:

I concur in the result reached by the majority. Faced with clearly prejudicial and excludable statements in the audio portion of the tape (i.e. appellant's invocation of his *Miranda* rights), it was not an abuse of the trial court's sound discretion to order the suppression of the entire audio portion of the tape rather than redact particular statements.

I do not join in the majority's analysis of the alleged inflammatory nature of such audio or video tapes in general. Nor do I join in the majority's alternate holding that appellant's remarks during the sobriety tests were testimonial communications protected by the Fifth Amendment. I find neither discussion necessary to the disposition of this appeal. Furthermore, I do not perceive this appeal to have raised or decided what statements by appellant may be related to the factfinder at trial by means other than the audio portion of the video tape. We are called upon here only to decide whether the trial court abused its discretion

502

in suppressing the audio portion of the video tape. I would simply hold that it did not.