526 A.2d 1205

COMMONWEALTH of Pennsylvania

v.

James B. DAVIS, Jr., Appellant.

Superior Court of Pennsylvania.

Argued June 5, 1986.

Filed May 27, 1987.

Thomas E. Kuhn, Erie, for appellant.

Paul J. Susko, Assistant District Attorney, Erie, for Com., appellee.

Before ROWLEY, DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

After a trial by jury appellant, James Davis, was convicted of first degree murder, two counts of criminal attempt to commit murder, two counts of aggravated assault and various weapons offenses arising out of a multiple shooting in which one victim was killed and two victims were shot and severely wounded.

The salient question, *inter alia,* for our disposition is: whether police violate an accused's constitutional rights as set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when after thoroughly informing the accused of these rights, they ask for clarification of the accused's conflicting statements regarding intent to invoke or waive his constitutionally protected rights.

In addressing this case of first impression in Pennsylvania we turn to a brief account of the facts as elicited at trial:

On the evening of December 21, 1980, the Erie police responded to a report of a multiple shooting at a residence

on the city's east side. Davis, the appellant here, fled the scene of the shooting, but moments later was arrested by the police at his grandfather's home when he relinquished the firearm used in the crimes. According to the evidence at trial appellant entered the residence armed with a unlicensed .22 caliber magnum revolver, shot and killed Alberta Collins, a 38 year old woman and shot and wounded two other women, one of whom was almost nine months pregnant and lying on a bed in a room adjoining the one in which he shot and killed Alberta Collins. Appellant was twice given Miranda warnings, once on his way to the police station and again in the interrogation room at police headquarters. On his way to the interrogation room appellant was upset, crying and repeatedly stated, "I'm sorry, I'm sorry, what did I do?, why did I do it?." He then became violent and the police had to restrain him to prevent injury to himself or the police. When he regained his composure the police informed him of his constitutional rights under *Miranda* to which he gave every evidence of fully understanding. He said to the police that he wanted to talk about and make a statement regarding the crimes under investigation. Having said this, he was given a form on which were enumerated his rights under *Miranda.* Two questions to be answered at the bottom of the form contained a waiver proviso. To the first question, "Do you understand each of these rights I have explained to you," appellant answered by writing the word, "yes" and his initials thereafter. To the second question, "Having these rights in mind do you wish to talk to us now?", appellant wrote "No". At trial the police officers, testified that they were baffled by the written "no" answer in light of appellant's oral statement immediately prior thereto that he wanted to make a statement regarding the crimes under investigation. As a result, they asked why he wrote "no" to the second question and appellant answered that he meant, "I don't want an attorney." After this exchange, the appellant wrote the word "yes" to this second question and his initials thereafter in substitution of the word "No". Appellant then made his oral statement regarding the

crimes involved in this case which the officers reduced to writing. The appellant signed the statement and initialed its pages.

Specifically appellant argues that the lower court erred by refusing to suppress his statement to the police. He alleges, that under the pressure of in-custody interrogation, he was subjected to undue mental stress and did not mean to change his "No" answer to a "Yes" answer to the waiver question. And in addition he states he was incompetent to give a statement as he was under the influence of alcohol or drugs.

The Supreme Court of Pennsylvania has explained our role as a reviewing court on suppression issues.

> When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence obtained was in violation of the defendant's constitutional rights. Pa.R.Crim.P. 323(i), and must determine whether the Commonwealth has established by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). On review, this court must "determine whether the record supports the factual findings of the court below and the legitimacy of the inferences drawn from those findings." In doing so, we will consider "only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." (citations omitted.) *Commonwealth v. Davis*, 491 Pa. 363, 368, 421 A.2d 179, 181 (1980).

*Commonwealth v. Carbaugh*, 356 Pa.Superior Ct. 42, 514 A.2d 133 (1986).

The detectives' testimony on behalf of the Commonwealth at both the suppression hearing and trial was as follows:

Detective H. Gregory Strickland explained appellant's initial negative response:

> I asked him to answer question number two, and he wrote a no in there. At this point either myself or Sergeant Turner, I'm not sure wish [sic], he indicated

after I read to him that he wanted to talk to us, and I think [sic] was myself or Turner said, "What do you mean no after you already indicated you wanted to talk to us?" He said, "I don't want an attorney." So, we said, "Do you want to talk to us?" And he said, "Yes." We scratched out the no and we told him he would have to write a yes if you wanted to talk to us.

Detective William Turner testified:

I was watching the defendant very closely ... and I noticed that he wrote no, and I commented, "No?" Because we had already gone through, do you want to talk to us about it, and the question was said to him, and he answered verbally. "Do you want to talk to us about what happened, understanding we have gone through the five rights? Do you understand each of these rights? And he answered, "Yes." Greg [Detective Strickland] said to him, "Having these rights in mind, do you wish to talk to us now? And he said, "Yes," and Greg said, "Okay. Answer the question. Write your answer in." And he wrote, "No," and I said, "No?" And he said, "No." I said, "You just said you wanted to talk to us." "Yeah, I don't want an attorney," I haven't the faintest idea, but that is exactly what he said.

It was after this exchange that appellant explained he did not want an attorney and wrote the word "yes" and his initials in answer to the second question. The suppression court found that appellant's complaints of the pressure he felt during the interrogation and his allegations of drug or alcohol influence were not credible and that his oral statement to the police was made voluntarily, understandingly and intelligently in an atmosphere free and clear of any attempt of coercion, threats or cajoling on the part of the police.

██  Our Pennsylvania Supreme Court has consistently refused to adopt a *per se* rule of incapacity to waive constitutional rights based on mental or physical deficiencies. Rather, we are to look at all the circumstances to determine if a knowing and intelligent waiver was effected.

*Commonwealth v. Hicks,* 466 Pa. 499, 505, 353 A.2d 803, 805 (1976); *See also, Commonwealth v. Glover,* 488 Pa. 459, 412 A.2d 855 (1980). The Commonwealth need only show by a preponderance of the evidence that a voluntary, knowing and intelligent waiver of a constitutional right was made. *Commonwealth v. Scarborough,* 491 Pa. 300, 421 A.2d 147 (1980).

In maintaining that the police subjected him to improper questioning in violation of *Miranda,* and of his Fifth and Fourteenth Amendment rights as applied to the states appellant relies on the language of *Miranda:*

"If the individual indicates in any manner, at any time, prior to or during questioning, that he wishes to remain silent, the interrogation must cease".

There is no question that under *Miranda* an accused must be told that he has a right to remain silent, that anything he says shall be held against him in a court of law, that he has the right to counsel and that if he can't afford counsel the state will provide one for him. Once an accused categorically proclaims protection under one of these rights, either silence or right to counsel, all questioning by the police must cease.

However, the facts in this case do not, as appellant argues, violate his rights within the parameters of *Miranda.* Here the appellant sent out mixed signals to his interrogators. These conflicting messages posed understandable questions in the minds of the police, who like most humans, do not possess prescient powers that sweep away all the concerns of reasonable doubt. If there is any situation where police inquiry is appropriate this is such a case. The questions asked by the police in the attempt to clarify appellant's intent when making two statements, each directly contrary to the other, were appropriate and commendable. The questions did not pertain to substantive or procedural inquiries into the crimes committed nor were they in any way coercive or threatening. They were asked

to determine whether appellant wanted to make a statement as he first orally indicated or whether he wanted to remain silent as he subsequently indicated in written form.

Recently, in *Connecticut v. Barrett*, —— U.S. ——, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), the United States Supreme Court reversed the Connecticut Supreme Court which held that the lower court should have suppressed defendant's oral confession when the defendant had said he would not give a written statement to the police without the presence of counsel, but would give an oral statement, which he proceeded to do. The Connecticut court had held that defendant's request for counsel was an invocation of one of his Miranda right and should have terminated any attempt by the police to take an oral statement from him.

The United States Supreme Court determined that defendant's oral statement made clear his willingness to talk about the sexual assault, and, there being no evidence that he was "threatened, tricked or cajoled" into speaking to the police, the trial court properly found that Barrett's decision to do so constituted a voluntary waiver of his right to counsel. The Court further held that although the *Miranda* rules were designed to protect defendants from being compelled by the government to make statements, they also give defendants the right to choose between speech and silence. In *Barrett*, the defendant had stated he would not put anything in writing without the presence of counsel and yet, the Supreme Court approved his oral confession as not being violative of his constitutional rights. In the instant case we are relieved of the request for counsel consideration. In fact, nowhere in the evidence in the instant case did appellant allege he exercised his right to have the benefit of counsel.

Although the United States Supreme Court in *Barrett* did not speak definitively on the effect of ambiguous responses to Miranda warnings, the circumstances of Barrett do present the consequences of two directly opposed state-

ments by a defendant regarding his constitutional rights.[1] The court stated that "nothing in our decisions, however, in the rationale of Miranda requires authorities to ignore the tenor or sense of a defendant's response to these warnings. Interpretation is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous. Here, however, Barrett made clear his intentions, and they were honored by the police." *Id.*, at ——— ——, 107 S.Ct. at 832–33.

Instantly appellant initiated the events which occurred after being given his Miranda warnings by declaring he wanted to talk to the police. Thus there was nothing coercive on the part of the police in understandably asking for clarification of his answer "No" in light of his expressed desire to speak.

Opinions in the state and federal courts do address the ambiguity problem.

In *United States v. Riggs*, 537 F.2d 1219 (4th Cir., 1976) the issue of the police need for clarification of ambiguities arising out of custodial interrogation was addressed. In *Riggs* the defendant, when given his *Miranda* warning and then informed of the general nature of the crime being investigated, made the following statement:

> I don't know anything about the $1,000; I didn't take the money, and I have no information to furnish the FBI with regard to the money.... What happens now?

The FBI agent continued to question the defendant about his employment, salary and debts, and to seek a release to enable the FBI agent to get information about Riggs' loans and the search of his car. Eventually Riggs confessed. Riggs' contention on appeal was that his confession was inadmissible because it was the product of continued interrogation after he asserted his right to have questioning cease. The court cited the clear requirement of Miranda, "Once warnings have been given, the subsequent procedure

---

1. This issue is also left open in *Smith v. Illinois,* 469 U.S. 91, 96 n. 3, 105 S.Ct. 490, 493 n. 3, 83 L.Ed.2d 488, 494 n. 3 (1984) (per curiam) and *Commonwealth v. Hubble,* 509 Pa. 497, 504 A.2d 168 (1986).

is clear. If an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." However, the Riggs court found *Miranda* to be inapplicable because defendant's statement that he had "no information to furnish the FBI with regard to the money" was susceptible of two interpretations, either an attempt to cut off questioning under *Miranda* or a declaration of ignorance not precluding further cooperation during the investigation. The court decided the latter interpretation was the more plausible. However, the important part of the *Riggs* decision is as follows:

> We add a note of caution. In a case such as this, where a suspect makes a statement which arguably amounts to an assertion of his Miranda rights and the interrogating agent recognizes that the statement is susceptible of that construction, his questioning with regard to the crime he is investigating should immediately cease and he should then inquire of the suspect as to the correct interpretation of the statement. Only if the suspect makes clear that he is not invoking his Miranda rights should substantive questioning be resumed. Such a practice could well save the government's case and the admissibility of the suspect's statement where a suspect's ambiguous statement might well be interpreted to be an assertion of *Miranda* rights.

*Id.,* at 1222.

In the instant case, it was reasonable for the Erie police to construe appellant's "No" as a clear declaration of ignorance not precluding clarification, considering his equally clear statement made prior thereto. In *State v. Shifflett,* 199 Conn. 718, 508 A.2d 748 (1986) defendant, after being given *Miranda* warnings, refused to sign a waiver form but said he would make an oral statement. At some point during interrogation, defendant said he would like to resolve all charges against him in one "package deal" to be worked out between his attorney and the state's attorney. The next day after again receiving Miranda warnings he

orally confessed to his crimes. Appellant continued to refuse to sign a written statement. On appeal, the Supreme Court of Connecticut found that the defendant did not constructively invoke his right to counsel when he mentioned his attorney while discussing a "package deal". However, the salient part of the opinion as it relates to the issue at hand is the court's language that "when circumstances are such as to reasonably apprise the interrogating officers that an accused may have invoked his right to counsel, the officers must clarify his intentions rather than proceed to question him."

In *United States v. Chansriharaj*, 446 F.Supp. 107 (S.D. N.Y.1978) the court found defendant's statement that a friend was trying to get him a lawyer to be unclear. However, it found that the police's attempt at clarification was faulty. As a result, the court held, "Suzuki's statement did not require termination of the interview. What was called for was some form of inquiry designed to clarify the defendant's intentions. After the defendant's ambiguous remarks, only with the help of such a clarification could the government sustain its burden under *Miranda* of showing waiver. What the assistant did instead of seeking clarification was simply to reiterate the nature of the right and ask again whether Suzuki understood it. We cannot find on that record a satisfactory demonstration of waiver and accordingly suppress the interview." *Id.*, at 109. In the instant case, however, there was a clear and effective attempt by the Erie police to clarify an ambiguous situation without employing any coercive tactics giving appellant a free and untrammelled choice of silence or speech. While the word "No" written by the defendant, in and of itself is unambiguous, it nevertheless created an ambiguity given the circumstances of the statement immediately prior thereto.

The cases cited by appellant in his brief are inapposite. In *Commonwealth v. Carbaugh*, 356 Pa.Superior Ct. 42, 514 A.2d 133 (1986) this court was confronted with the issue of whether the defendant's statement was rendered inad-

missible by the failure of police to stop questioning him after his numerous requests to remain silent. There we held that the police subjected appellant to improper questioning in violation of his right to remain silent. Appellant's attempts to stop the questioning were ignored by the police and threats were made by them in order to secure his confession. Therefore, the court concluded the questioning could "only be characterized as a callous disregard of appellant's rights and as an effort 'to wear down his resistance and make him change his mind.' " *Id.*, 356 Pa.Superior Ct. at 48, 514 A.2d at 136.

Appellant maintains that Pennsylvania does not distinguish between questions that are asked for clarification and questions that elicit the substantive facts of the criminal episode. For this proposition appellant cites *Commonwealth v. Simala*, 434 Pa. 219, 252 A.2d 575 (1969). Appellant's reliance on this case is misplaced for if anything it adds credence to our holding today. In *Simala* the defendant confessed with full understanding of his Miranda rights without any illegal or improper conduct by the police or by the Mayor to whom he first confessed. The court in its opinion stated that it is not custody plus questioning which Miranda safeguards but custody plus police conduct ... calculated to, expected to or likely to evoke admission that is important as it relates to the protection of an accused's rights. *Id.* The court in *Simala* further explained that the prosecution can only use a confession given by an accused without any prompting before warnings are given.

> Even where an accused blurts out a confession, Miranda warnings at the least should be necessary before any questions are asked *that do anything more than clarify statements already made, See* Institute of Continuing Legal Education, "Criminal Law and the Constitution—Sources and Commentaries" 354 (1986). (emphasis added).

*Id.*, 434 Pa. at 226, 252 A.2d at 579.

The other cases cited by appellant do not meet, head-on, the problem of clarification and therefore are of no assistance to us.

■ Under the circumstances, we agree with the learned lower court that appellant's constitutional rights were in no way violated when he confessed and his confession was properly admitted at trial. We find nothing in this case which would intimate that appellant did not voluntarily, knowingly and intelligently decide to confess. This issue is initially to be determined by the suppression court and when its findings have ample support in the record they will be sustained upon appellate review. *Commonwealth v. Bundy,* 458 Pa. 240, 244, 328 A.2d 517, 520 (1974).

Appellant raises other issues of error committed by the court below and numerous allegations of ineffective assistance of trial counsel. They are as follows: (1) whether the lower court erred in deciding that appellant's right to a speedy trial was not violated; (2) whether the lower court erred in admitting appellant's confession into evidence before the Commonwealth established the *corpus delicti;* (3) whether the lower court's instruction to the jury regarding voluntary manslaughter was incorrect; (4) whether the evidence was sufficient to support appellant's conviction; and (5) whether the trial counsel was ineffective for failing to do the following: request sequestration of the police officers who were Commonwealth witnesses, to impeach the only Commonwealth witness with a prior conviction, to impeach a witness with her prior inconsistent statement, to object to the characterization of the victim during trial as a "victim of murder", to object to the Commonwealth's use of hearsay during rebuttal, to object to the prosecutor's prejudicial statements during closing and to object to the court's charge to the jury on the grading of offenses.

Appellant seeks review of an alleged violation of his rights under Pa.R.Crim.P. 1100 which governs a defendant's right to a speedy trial. The instant charges were filed against appellant on December 22, 1980. Accordingly, the run date was June 20, 1981.

Appellant concedes that he requested several continuances prior to trial either because his counsel was unavailable for various hearings or that he petitioned the court for the

appointment of new counsel. On May 11, 1981 the date scheduled for trial, (approximately 5 weeks before the run-date) appellant and his second counsel appeared before the court to obtain a continuance in order to petition for a psychiatric evaluation of appellant. On May 13, 1981 a hearing was held on the petition and appellant requested new counsel for the third time. The court informed appellant that the Commonwealth was prepared for trial and that if the case did not proceed now, the next available criminal session of court was the following July. Nevertheless, appellant exercised his option to retain new counsel. Because of this request the court asked the Commonwealth to file a petition to extend the time for trial until July 15, 1981 and to reflect in the petition the fact of appellant's request. The court then granted the petition based on the hearing of May 11, 1981. It is the grant of the Commonwealth's petition to extend time for trial to which appellant objects.

■ Under *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976) the court may grant an extension under Rule 1100 upon a record showing of due diligence by the Commonwealth and certification that trial is scheduled for the earliest date consistent with the court's business. The record here establishes that despite the Commonwealth's readiness for trial the delay was occasioned by appellant's request for new counsel. There was no reason for the court to hold a hearing when it was apparent that appellant was not ready for trial having entered a petition to appoint new counsel. We find no error in the court's finding that Rule 1100 was not violated.

■ Appellant asserts that the lower court erred in admitting his confession into evidence before the Commonwealth had established the *corpus delicti* with regard to the attempted murder committed against Vicky McCoy who was not present at trial because she could not be found. Appellant alleges that the evidence adduced at trial regarding the crime of attempted murder established nothing more than that the victim suffered a gunshot would not necessarily having the elements of attempted murder

present. In order to establish the *corpus delicti* it is enough for the Commonwealth to prove beyond a reasonable doubt that the injury which occurred is consistent with a crime having been committed; the Commonwealth need not rule out the possibility of an accident or suicide. *Commonwealth v. Rhoods*, 225 Pa.Superior Ct. 208, 310 A.2d 406 (1973) quoting *Commonwealth v. Boykin*, 458 Pa. 25, 298 A.2d 258 (1972). Appellant's argument is without merit in that the Commonwealth proved, before the admission of the confession, Ms. McCoy's injuries through the testimony of the paramedics who arrived immediately following the shooting. The admitted evidence that preceded the introduction of appellant's confession established that there were three victims shot at the residence where Ms. McCoy was found. The paramedics also found Ms. McCoy in severe distress and calling for help and stating that she had been shot. Accordingly, we find no abuse of discretion by the court in deciding that the *corpus delicti* was established prior to the admission of appellant's confession.

Appellant complains that the trial court erred in its charge to the jury on voluntary manslaughter when it charged that the crime of voluntary manslaughter can be made out only if "the surrounding circumstances take away every evidence of cruelty or a depraved heart or wantonness." An evaluation of the court's charge to the jury must be based upon an examination of the instruction as a whole to determine if it was fair or prejudicial. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983) *cert. denied* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986). *Commonwealth v. Zimmerman*, 351 Pa.Superior Ct. 5, 504 A.2d 329 (1986). The lower court in its opinion concedes that the statement complained of by appellant was incorrect. However when read in the context of the statements that preceded and followed it, the charge on voluntary manslaughter was correct. The charge was as follows:

Because voluntary manslaughter involves an intentional act, confusion sometimes exists in the jury's mind concerning the difference between that crime and the

crime of first degree murder. If you bear in mind that voluntary manslaughter is never attended by legal malice, that is, by the existence of a depraved heart, cruelty, or recklessness of consequences, you will not go astray.

Voluntary manslaughter is willful, but it is necessary that the surrounding circumstances take away every evidence of cruelty or a depraved heart or wantonness.

Therefore, to reduce an intentional blow or wound which results in death to voluntary manslaughter, there must be a sudden and intense passion resulting from serious provocation by the individual without time to cool and placing the Defendant beyond the control of his reason and suddenly impelling him to do the deed.

We find this language to constitute a proper charge on voluntary manslaughter. Pa.SSJI (Crim.) § 15.2504.

■ Appellant argues that the evidence was not sufficient to support his convictions. The well established standard for reviewing the sufficiency of the evidence is as follows:

... In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. ...

*Commonwealth v. Whiteman,* 336 Pa.Superior Ct. 120, 485 A.2d 459 (1984). While appellant concedes that he shot the victims, he argues that in light of his claim of self defense there was not enough evidence to warrant the jury's finding of guilt as to the first degree murder, attempted murder, assault or the various weapons offenses with which appellant was charged. Appellant's argument appears to be one of credibility which is a challenge to the weight of the evidence rather than the sufficiency. Where evidence is conflicting, it is the province of the finder of fact to determine the credibility of the witnesses. In exercising this prerogative, the factfinder is free to believe all, part or none of the evidence. *Commonwealth v. Arms,* 489 Pa. 35, 413 A.2d 684 (1980).

■ The evidence presented at trial identified the cause of death of the deceased victim as a gunshot wound. The testimony of the Commonwealth's eye witness, Diane Hill, established that the appellant shot and injured her and Vicky McCoy as well as having shot and killed Alberta Collins. This testimony was further corroborated by appellant's confession which was admitted into evidence. Clearly, this evidence supports appellant's conviction of first degree murder and the other offenses of which he was convicted. *See Commonwealth v. Santiago,* 476 Pa. 340, 382 A.2d 1200 (1978) (testimony of eye witness which placed defendant at the scene of the crime and established that as a result of defendant's conduct victim was motionless, face down, in a pool of water was sufficient for the jury to conclude beyond a reasonable doubt that defendant had killed the victim wilfully, deliberately and with premeditation). Issues of credibility are properly left to the jury and here the jury chose to resolve any conflict between the testimony presented by the Commonwealth and that of appellant, in favor of the Commonwealth.

■ Appellant submits that his trial counsel rendered ineffective assistance of counsel. The standard for evaluating the effectiveness of counsel is set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 602–06, 235 A.2d 349, 352–53 (1967):

> We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

In order to determine whether appellant received ineffective assistance of counsel, we must first examine the merits of

his claims. Counsel will not be deemed ineffective for failing to assert a baseless claim. *Commonwealth v. Garvin*, 335 Pa.Superior Ct. 560, 485 A.2d 36 (1984). "Moreover, the courts of this state have repeatedly said that counsel will not be deemed ineffective in the absence of some showing that the defendant was prejudiced by counsel's alleged shortcomings". *Commonwealth v. Litzenberger*, 333 Pa.Superior Ct. 471, 482, 482 A.2d 968, 974 (1984).

Appellant alleges that counsel was ineffective for failing to object to the sequestration order issued by the court as it allowed the affiants, police officer, to remain in the court room during trial. The question of whether to sequester witnesses is one within the discretion of the court and the scope of such an order is also within its discretion. Accordingly, an appellate court will not find reversible error absent a clear abuse of discretion. *Commonwealth v. Fant*, 480 Pa. 586, 391 A.2d 1040 (1978) *cert. denied* 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1056 (1979). We find no abuse of discretion here. The officers to whose presence in court appellant objected testified to the circumstances surrounding appellant's confession. This testimony was also received into evidence during a pretrial suppression hearing where the officers were not sequestered but were subject to appellant's cross-examination. Where witnesses had all testified at a prior trial and examination of the testimony indicated that it was the same as that given at the prior hearing, refusal by the court to sequester witnesses is not an abuse of discretion. *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). Counsel was not ineffective for failing to object to the court's sequestration order.

Appellant contends that trial counsel was ineffective for failing to impeach Commonwealth witness Diane Hill with evidence of her conviction of a *crimen falsi* (larceny), in the state of Florida. Attached to appellant's reproduced record is a copy of the conviction obtained subsequent to trial. Appellant maintains that trial counsel was ineffective for not discovering the conviction and accordingly not using it for impeachment purposes.

■ Failure of counsel to impeach the Commonwealth's only witness with his own criminal record has been held to be ineffective assistance of counsel. *Commonwealth v. Grove,* 229 Pa.Superior Ct. 293, 324 A.2d 405 (1974). In *Grove,* defense counsel failed to attack the credibility of the Commonwealth's only witness in any manner. Such is not the case here. While Diane Hill was the Commonwealth's only witness, her credibility was attacked by the admission on cross-examination of evidence that Ms. Hill forged the signature and cashed her boyfriend's unemployment check and that Ms. Hill conspired with her boyfriend to steal pills from his place of employment. Ms. Hill's larceny conviction would have been cumulative in its effect against her credibility and its absence at trial did not deprive appellant of a fair trial. We find no prejudicial error here. *See, Commonwealth v. Little,* 449 Pa. 28, 295 A.2d 287 (1972). We conclude similarly with regard to the alleged prejudicial error on the part of defense counsel for not objecting to the characterization of the victim, Alberta Collins, during the course of trial as a "victim of murder".

■ Appellant asserts trial counsel's ineffectiveness for failing to impeach one of the officers for making inconsistent statements. Any harm that could have accrued to appellant in this instance was cured by counsel's vigorous arguments during closing wherein he attacked the credibility of the officer's testimony. *Cf., Commonwealth v. Chapman,* 255 Pa.Superior Ct. 265, 386 A.2d 994 (1978) (footnote 15 (2).)

■ Appellant assigns as counsel's ineffectiveness his failure to object to the court's allowing the Commonwealth to introduce impeaching evidence against Vicky McCoy who at a preliminary hearing testified in favor of appellant. Because Ms. McCoy was unavailable at trial, appellant introduced her recorded testimony taken at his preliminary hearing. Specifically, appellant objects to the Commonwealth's calling as a witness a police officer who read into evidence a statement he took from Ms. McCoy immediately following the criminal episode. This statement was used to

impeach Ms. McCoy's recorded testimony as it differed from her account of the criminal episode given by her at appellant's preliminary hearing. Appellant maintains that Ms. McCoy's statement to the officer is inadmissible hearsay. Appellant is proceeding under a misconception for the statement was not offered to prove the truth of the matter asserted but to cast doubt on the witness's veracity. A trial court does not abuse its discretion in allowing the prosecution to attempt to impeach a witness's testimony by utilizing a statement given by the witness to a police officer at the scene of the crime. *Cf., Commonwealth v. Thomas,* 284 Pa.Superior Ct. 375, 425 A.2d 1151 (1981). We find no abuse of discretion by the court in admitting the impeachment testimony, and, therefore, will not find counsel to be ineffective for failing to object to it.

Appellant avers that counsel was ineffective for failing to object to the prosecutor's closing remarks which were prejudicial. It is settled law that the prosecutor has an obligation during closing arguments to present the facts in a manner that will lead the jury to a dispassionate and objective evaluation and will produce judgment warranted by the evidence. *Commonwealth v. Clark,* 280 Pa.Superior Ct. 1, 421 A.2d 374 (1980). Also, we must assess isolated comments of the prosecutor in relation to his entire closing statement. Although the prosecutor made strong and often sarcastic remarks, they were based on the evidence presented and were tempered by his comment to the jurors that they ultimately must determine the truth based on the testimony presented by both parties. Thus, we find no error here.

Lastly, appellant assigns as ineffectiveness counsel's failure to object to the court's charge to the jury on the crimes of assault and attempted murder. Appellant avers that the charge was improper as the court did not adequately distinguish the grades of assault or inform the jury that appellant could be found guilty of the lesser grades of attempted assault or manslaughter, rather than attempted murder. Appellant maintains that it was likely

that had the jury been so instructed he would have been convicted of lesser offenses. In examining a challenge to the court's jury instruction, we are required to examine the charge as a whole. *Ohle* and *Zimmerman, supra.* Having done this, we find no merit to appellant's claim. In order for appellant to be granted relief he must present a credible claim that he actually received ineffective assistance of counsel. *Commonwealth v. Johnson,* 355 Pa.Superior Ct. 123, 512 A.2d 1242 (1986). This appellant has failed to do.

Finding no merit to appellant's underlying claims, we cannot find counsel ineffective for failing to raise them. *Garvin, supra.*

For the aforestated reasons the judgment of sentence is affirmed.