364 A.2d 296

**COMMONWEALTH of Pennsylvania**

v.

**Alton COOPER, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued April 2, 1976.

Decided Oct. 8, 1976.

---

482

Judgments of sentence reversed; case remanded for new trial.

Stephen R. LaHoda, First Asst. Public Defender, Levittown, Richard S. Wasserbly, Havertown, for appellant.

Stephen B. Harris, First Asst. Dist. Atty., Peter F. Schenck, Doylestown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

On August 19, 1974, appellant, Alton Cooper, was convicted by a jury of murder in the second degree, assault with intent to kill, aggravated assault and battery, and assault and battery in the death of his nineteen-month old daughter. Post-trial motions were filed and denied by a court en banc. On May 21, 1975, the court imposed a sentence of not less than one year nor more than four years in the Bucks County Prison for the conviction of murder in the second degree and concurrent sentences of not less than one year nor more than four years on the convictions for aggravated assault and battery and assault with intent to kill. Appellant appealed the murder conviction to this court and appealed the convictions for aggravated assault and battery and assault with intent to kill to the Superior Court, which in turn certified the record to this court on July 1, 1975.

Appellant argues that the district attorney's comment in his summation, concerning appellant's exercise of his Fifth Amendment right, after his arrest, not to speak to police without an attorney present, was improper and prejudicial. We agree.

The following excerpt is that portion of the district attorney's summation which we consider improper comment on appellant's exercise of his constitutional right not to be interrogated without his attorney present:

" . . . Mrs. Cooper, you saw her testify on the stand in front of you. You had an opportunity to evaluate her credibility. She was frank in admitting that, yes, on several occasions she did discipline the child with something else than her hand. She told you about disciplining the child and what happened. You will have to evaluate that testimony on the basis of your own experience and say to yourselves, 'Is that testimony credible?'

"We know that Mr. Cooper gave a statement, that he talked to the police, and that he was up to the District Attorney's office and gave another statement. And before he gave those statements he was warned of his constitutional rights. He was told that anything he said could and would be used against him in a Court of Law. And is there anything in this case other than the argument of Mr. LaHoda, to suggest that this was some kind of a cover-up, that Mr. Cooper was, somehow, going to take the rap for his wife. I would submit to you that there is not.

"He gave a statement after being thoroughly warned of his rights, and he told us in detail exactly what had happened. What did happen when he left the District Attorney's Office after he had been interrogated? What happened was that they went down into their car and drove away. They got up by the shopping center and Mr. Cooper told Mrs. Cooper about hitting with the sandal and she suggested that they go back and be truthful about that. You will recall up to this point the autopsy had not been finished, so that nobody knew the cause of the child's death simply because all of the evidence wasn't in.

"But what happened after they left and before they came back and before Dr. Mihilakis had completed his autopsy, and there was a call from Quakertown Hospital, and a decision was made to arrest Mr. Cooper?

*"He came back to the office and he was arrested and at that point the Coopers declined to answer any further questions until an attorney was present."* (Emphasis supplied.)

█ An evaluation of this comment indicates that the district attorney created a picture that Mr. Cooper was willing to talk prior to his arrest but unwilling to cooperate with the police after his arrest. We are of the opinion that the above comment dealing with appellant's silence after his arrest is an improper and prejudicial comment on the exercise of his Fifth Amendment rights.

In *Commonwealth v. Stafford,* 450 Pa. 252, 263, 299 A.2d 590 (1973), cert. denied, 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404, this court, in discussing a prosecutor's remarks concerning silence at the time of arrest, stated:

" . . . The Fifth Amendment protects the accused's right to remain silent and it is of no moment that in the instant case the appellant remained silent at the time of his arrest. To allow comment on his silence at the time of the arrest would also make the assertion of his privilege costly. The difference between the prosecutor's comment on the accused's failure to testify in Griffin and the prosecutor's comment here about the accused's failure to answer questions at the time of his arrest is 'infinitesimal.' *Gillison v. United States,* 130 U.S.App.2d 215, 399 F.2d 586, 587 (1968)."

See also *Commonwealth v. Haideman,* 449 Pa. 367, 296 A.2d 765 (1972).

█ The Commonwealth contends that the comment was permissible because defense counsel first raised the fact of appellant's silence after arrest. We do not agree.

The fact that defense counsel first brought to the attention of the jury the fact of silence did not give the prosecutor a reciprocal right to comment on appellant's exercise of his Fifth Amendment rights. See *Commonwealth v. Stafford, supra,* 450 Pa. at page 263, 299 A.2d 590.

The Commonwealth further contends that if the comment was error, it was harmless error beyond a reasonable doubt. We do not agree. The district attorney's remark reasonably may have contributed to the guilty verdict and, therefore, cannot be said to be harmless error beyond a reasonable doubt. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973). Appellant raises other allegations of error which we need not discuss because of our resolution of the above issue.

Judgments of sentence reversed. Case remanded for a new trial.

POMEROY, J., filed a concurring opinion in which JONES, C. J., joined.

POMEROY, Justice (concurring).

I join in the Court's opinion and decision because, as I view it, the prosecutor's statement in this case, as quoted by the majority, Opinion *ante* at 297, could "by reasonable implication" indicate that an adverse inference of guilt could be drawn from the defendant's silence at the time of his arrest. See and compare, *Commonwealth v. Brenizer,* 467 Pa. 347, 353, 356 A.2d 784, 786 (1976) (Concurring Opinion of Pomeroy, J.) and *Commonwealth v. Tervalon,* 463 Pa. 581, 593, 345 A.2d 671, 678 (1975).

I think it worth noting, also, that in *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694, 720 n. 37 (1966) the Supreme Court of the United States explicitly stated that "[t]he prosecution may not,

therefore, use at trial the fact that [the accused] stood mute or claimed his privilege [against self-incrimination] in the face of accusation." The Supreme Court has recently and explicitly reaffirmed that view in its decision in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L. Ed.2d 91 (1976). The Court there held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." 426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d at 98 (footnote omitted).

JONES, C. J., joins in this concurring opinion.