461 A.2d 308

**COMMONWEALTH of Pennsylvania**

v.

**Bradley MAY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 22, 1982.

Filed June 3, 1983.

Petition for Allowance of Appeal Denied Sept. 28, 1983.

Stuart Wilder, Assistant Public Defender, Doylestown, for appellant.

Jeffery M. Williams, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in admitting evidence of statements made by appellant without proper *Miranda* warnings. We agree and, accordingly, vacate the judgment of sentence and remand for a new trial.

On July 22, 1979 appellant surrendered to Bensalem police after shooting Dr. Joel Bockol. At appellant's subsequent jury trial, the Commonwealth's evidence established the following: Appellant and Bockol were jockeying for position while driving upon Interstate 95. Appellant would pass Bockol, then cut in front of him and slow down, prompting Bockol to reciprocate. This maneuvering contin-

ued until appellant abruptly turned onto the Street Road exit. Bockol followed by driving over the grass separating the highway from the exit ramp. Both cars sped into the parking lot of a nearby donut shop. Appellant left his vehicle carrying a gun and warned Bockol to stay away. As appellant began to walk away, Bockol emerged from his car and grabbed appellant. Appellant shot Bockol in the stomach. Bockol staggered five to ten feet to appellant's vehicle and reached in for the ignition key. Appellant then shot Bockol a second time from five feet away. Appellant's testimony corroborated much of the Commonwealth's evidence with several exceptions. Appellant testified that he had received anonymous threats prior to the incident and that Bockol's attempts to run him off the road caused him to believe that Bockol had been the source of the threats. He admitted firing two shots at Bockol's tires on Interstate 95 but alleged that the shots fired in the parking lot were in self-defense. Appellant was found guilty of voluntary manslaughter and sentenced to four-to-eight years imprisonment. This appeal followed.

Appellant contends that the lower court erred in permitting a corrections officer's testimony about what he overheard appellant say to a prison psychiatrist because appellant had not been given the *Miranda* warnings. Appellant turned himself in to Bensalem police immediately after the shooting and was questioned from 4:30 to 5:30 p.m. After a second interrogation ended about 7:30 p.m., appellant was transferred to Bucks County Prison. After midnight, appellant was taken from his cell by Sgt. David Belgarde and interviewed in the prison infirmary by the prison psychiatrist. Belgarde positioned himself in the infirmary's outer office to observe appellant and listen to the interview. He testified at trial that he had heard appellant tell the doctor: (1) "I don't need this bullshit. I don't want any trouble, but if anybody fucks with me, I will kill them;" (2) that he would kill the person who was "fooling around" with his wife; and (3) that he had smashed his army superior with a wrench, "poked him in his head and shot him with a .45."

(N.T. December 18, 1979 at 9–10). Neither Belgarde nor the psychiatrist gave appellant any *Miranda* warnings.

 "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). "[A]bsent other fully effective procedures, a person must receive certain warnings before any official interrogation, including that he has a 'right to remain silent' and that 'anything said can and will be used against the individual in court.'" *Estelle v. Smith*, 451 U.S. 454, 466–467, 101 S.Ct. 1866, 1875, 68 L.Ed.2d 359 (1981). Here, appellant was transferred to County prison and then hours later to the prison infirmary where he was interrogated by the prison psychiatrist while a corrections officer eavesdropped. The lower court concedes that the psychiatrist's testimony would be precluded under *Estelle v. Smith, supra*, (psychiatrist's testimony detailing statements made by defendant at court ordered pre-trial examination precluded from sentencing hearing because no *Miranda* warnings given). It cannot be seriously argued that a corrections officer, employed by the same institution and required by that institution's security regulations to remain in appellant's presence is not similarly precluded from testifying as to statements taken in violation of appellant's Fifth Amendment rights. Thus, because appellant was not informed of his *Miranda* rights prior to the interrogation, any statements gleaned from it are inadmissible.[1]

---

**1.** We cannot agree with the lower court's finding that appellant waived any objection to the lack of *Miranda* warnings because he was deliberately broadcasting these statements to Belgarde to create a "macho image" and thus protect himself from the prison population. Had appellant been informed that his statements to the psychiatrist would be used against him at trial, he may well have reconsidered his purported strategy. Without the proper warnings, we cannot determine that appellant's statements were "given freely and voluntarily without any compelling influences." *Estelle v. Smith, supra* at 469,

■■■ The lower court held, however, that even if it was error to admit the statements, the error was harmless beyond a reasonable doubt. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). It found the jury verdict of voluntary manslaughter "so inconsistent with the Commonwealth case and so consistent with [appellant's] version of what took place that we find it logically impossible to believe that the testimony of Belgarde could have or did in any way contribute to the verdict.... If the jury had believed and was influenced by Belgarde's testimony, they (sic) would have found him guilty of third degree murder at a minimum." (Lower Court Op. at 26–27). Recognizing that "verdicts are arrived at after many objective and subjective considerations and do not always conform perfectly to the instructions given by the court," our Supreme Court rejected a remarkably similar attempt to surmise what a jury believed and disbelieved in *Commonwealth v. Turner,* 499 Pa. 579, 588, 454 A.2d 537, 540 (1982). "In order to draw conclusions from the verdict about what the jury believed, the [lower court's] hypothesis about the jury's state of mind would have to be a necessary and sufficient explanation of the verdict. But the most obvious of alternative explanations presents itself: the jury may have delivered a compromise verdict." *Id.* Here, Belgarde's testimony portrayed appellant as impetuous and violent and may well have resulted in the jury's finding that he was acting under a mistaken justification. Similarly, the jury may have thought the Commonwealth's case "significantly bolstered" by the additional statements and "that it would be appropriate to impose a verdict more severe than acquittal, but less severe than murder." *Id.* In any event, we cannot be certain that the jury would have resolved the matter in the same manner absent the improper statements, and thus, we cannot hold that their admission was harmless beyond a

101 S.Ct. at 1876; *Miranda v. Arizona, supra* 384 U.S. at 478, 86 S.Ct. at 1629.

reasonable doubt.[2] Accordingly, we must vacate the judgment of sentence of the lower court and remand for a new trial.[3]

Judgment of sentence vacated and a new trial granted. JURISDICTION IS RELINQUISHED.

McEWEN, J., files a dissenting opinion.

McEWEN, Judge, dissenting:

While the opinion of the majority reflects a thorough study of the facts of the occurrence as well as a careful analysis of the applicable law, I must, nonetheless, very respectfully dissent.

The focus of the entire trial was a quite brief encounter when appellant twice shot the victim and the principal issue for the scrutiny of the jury was the claim of self-defense by appellant. Certainly, however, the description by appellant himself during his testimony at the trial concerning the preceding events upon the highway was significant:

I was in the center lane at this time and he was trying to cut me off the road again. That is when I reached into the console of my truck which was, like, between the seats and I pulled out my revolver and I shot two shots out of six, out the driver's side window at the vehicle, front passenger side tire.... I had the gun in my left hand and I had it braced up against the rearview mirror

**2.** The lower court's holding that the admission of appellant's statement concerning the shooting of his army supervisor was harmless because it was already properly before the jury through the testimony of another corrections officer who testified that appellant blurted it out while being processed at Bucks County Prison is also without merit. Assuming *arguendo* that the statement was not the result of police interrogation, it was still inadmissible as evidence of prior unrelated crimes. *See Commonwealth v. Morris,* 493 Pa. 164, 425 A.2d 715 (1981); *Commonwealth v. Laughman,* 306 Pa.Superior Ct. 269, 452 A.2d 548 (1982). The lower court's subsequent limiting instruction to the jury was insufficient to cure the prejudice aroused by the irrelevant and offensive testimony. *Commonwealth v. Laughman, supra.*

**3.** Because of our disposition of this matter, we need not address appellant's remaining contentions.

that is bolted to the door and because of the wind and everything, we were going so fast, the wind made it very difficult to steady it.

The altercation on the parking lot, after the vehicles had come to a stop, was the subject of testimony by the accused and by six, apparently impartial, eyewitnesses. The decision of the jury was basically whether to accept the claim of appellant that he twice shot the victim in self-defense, the second time when the victim was clearly wounded and approximately five to ten feet away.

It seems beyond dispute that the prosecution should not have been permitted to present the following evidence: (1) the testimony of the prison guard about what he overheard appellant say to his prison psychiatrist; (2) the admission of appellant concerning the shooting of an officer while he was in the Army; and (3) the testimony of appellant during cross-examination by the prosecutor concerning his alleged shooting of a burglar. It would seem, however, that this inadmissible testimony did not portray any behavior or characteristic of appellant any more unfavorable than reflected by his behavior during the entire occurrence as he himself described it in his testimony.

Our examination of the record reveals that the trial was conducted over more than six days, that counsel for appellant provided an intense and able representation of his client, and that the distinguished Judge Oscar S. Bortner provided thorough and careful instructions to the jury upon the issue of self-defense. We also note that two of the three questions directed to the court by the jury during their deliberation requested a definition, one of "reasonable man" and the other of "retreating to safety". It also seems worthy of note that appellant claimed no error in connection with either the general charge upon those issues relevant to self-defense or the additional instructions thereupon. As a result, I am convinced that the jury performed its task properly and well and that the improper admission of certain testimony did not constitute reversible error.

This conclusion rests upon the decision of our Supreme Court in *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), as reiterated by that Court in *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246 (1982), which held that evidence improperly admitted can be treated as harmless on any one of three grounds:

> The evidence of guilt of the accused, without regard to the tainted evidence, is so overwhelming that conviction would have followed beyond a reasonable doubt without regard to that tainted evidence.

> The tainted evidence was merely cumulative of other proper persuasive evidence on the issue for which it was offered.

> The tainted evidence was so slight or tangential in its effect that its influence on the jury can be determined to have been *de minimis.*

As a result, I would affirm the judgment of sentence.