514 A.2d 133

**COMMONWEALTH of Pennsylvania**

v.

**Randy Scott CARBAUGH, Appellant (Two Cases).**

Superior Court of Pennsylvania.

Submitted May 12, 1986.

Filed Aug. 11, 1986.

Douglas W. Herman, Assistant Public Defender, Chambersburg, for appellant.

John R. Walker, District Attorney, Chambersburg, for Com., appellee.

Before BECK, CERCONE and ROBERTS, JJ.

CERCONE, Judge:

Appellant, Randy Scott Carbaugh, was convicted by a jury of third degree murder, robbery, theft and two counts of forgery arising out of the beating death of a woman he had met in a Chambersburg bar. He met her on the evening of April 16, 1984, and early in the morning of April 17, 1984, he confessed to his two sisters that he had just killed a female. Both sisters observed blood on him. He kept the victim's car and took some of her checks which he cashed at Letterkenny Federal Credit Union on April 17 and 19, 1984. On April 20, 1984, appellant, while driving the

victim's car, struck another car. He fled the scene of the accident, but the other driver knew him and reported his identity to police.

Appellant was arrested on April 20, 1984, at 5:45 p.m. and was administered Miranda warnings on the way to police headquarters. It was the manner of the interrogation that ensued which appellant successfully challenges in this appeal on the issue which we now address:

> Whether the failure of police to cease questioning appellant upon his numerous requests to remain silent rendered his subsequent confessions inadmissible as obtained in violation of Fifth Amendment rights? [1]

The Supreme Court of Pennsylvania has explained our role as reviewing court in the context of suppression issues.

> When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence obtained was in violation of the defendant's constitutional rights. Pa.R.Crim.P. 323(i), and must determine whether the Commonwealth has established by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). On review, this court must "determine whether the record supports the factual findings of the court below and the legitimacy of the inferences drawn from those findings." In doing so, we will consider 'only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.' (citations omitted.) *Commonwealth v. Davis,* 491 Pa. 363, 368, 421 A.2d 179, 181 (1980).

At the hearing on the pre-trial motion to suppress, Detective Haldeman testified as to the chain of events which occurred during his interrogation of appellant. He testified that he read a Miranda warning and consent form to appellant at 6:15 p.m. on April 20, 1984, upon their arrival at police headquarters. Appellant signed it, indicating that he

1. The Commonwealth has not submitted a timely brief to this court, a practice which we not only regret, but which we strongly disapprove.

understood his rights. The first one-half hour interrogation session was taped and transcribed and it was admitted into evidence as Commonwealth's Exhibit 5.

At the suppression hearing, the assistant district attorney asked the detective whether appellant at any time during the questioning had requested the services of an attorney, to which he answered, no. However, on cross-examination by appellant's attorney, reference was made by the detective to the numerous instances in which appellant requested the detective to cease his questioning. Commonwealth's Exhibit 5, the transcript of the interrogation reveals that after the third time that appellant stated his desire to stop being questioned, Detective Haldeman said:

You've got the right to answering [sic]. I've got the right to talk as long as I want to.

He continued the interrogation. After appellant's fourth request, another officer stated:

Trooper Wible: ... [W]e're going to arrest Esther, we [sic] going to arrest Nancy, and we're going to arrest Karen. We [sic] charge them all with murder the same as Randy.

Detective Haldeman: Do you want that to happen Randy?

Randy: No, I'm not even going to answer any more questions.

Detective Haldeman: You mean to tell me that you are going to sit there, after those people helped you, and you're going to let us put them in jail for conspiracy to commit murder? Is that what you're saying, Randy? Now, think about it young man, you're talking your mother, and your sisters, the three people you went to for help, who helped you, didn't question you, and now you're going to f_____ and hang them, is that what you are saying, Randy?

Randy: I just don't want to answer any more questions right now.

Two more requests to stop the interrogation were made by appellant before the officers stopped in order that appel-

lant could be searched. Under these circumstances, appellant made no admission as to the murder at this first thirty minute session, but he did admit to having the victim's car and to cashing her checks. He was then strip searched and the questioning resumed with Detective Haldeman's emphasis on the fact that the police had enough evidence to charge him with the homicide. Near the end of this second thirty minute period, appellant admitted to the murder, but expressed a desire to see his mother. After speaking with his mother, appellant, again admitted to the police that he beat the victim to death. He gave another statement to this effect in the early morning hours of the next day.

■ The trial court, in its opinion, correctly concluded that police in this case subjected appellant to improper questioning in violation of *Miranda v. Arizona*, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966):

If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.

Then, in *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), the question of whether, and under what circumstances, a resumption of questioning would be permissible, was addressed:

Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissiblity of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether the "right to cut off questioning" was "scrupulously honored." (footnote omitted.)

Thus, in this case it cannot be said that appellant's "right to cut off questioning" was "scrupulously honored," and the statement obtained should not have been admitted at trial.

*Commonwealth v. Reiland,* 241 Pa.Superior Ct. 109, 359 A.2d 811 (1976).

■ The trial court justified its admission, despite the violation of appellant's "right to become silent," on two grounds. The court found that the admitted statement was harmless error, citing *Commonwealth v. Story,* 476 Pa. 391, 411, 383 A.2d 155, 165 (1978): "an error, which, viewed by itself, is not minimal, may nonetheless be harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence." The court noted that appellant's sisters testified at trial that appellant said he had just killed a female and that they observed blood on him and also noted his distraught demeanor on April 17, 1984. Moreover, the court bolstered its harmless error rationale by referring to appellant's written statement which was made on April 21, 1984, and the voluntary oral statement which he made to the police after consulting with his mother on April 20, 1984. The court found that this evidence was substantially similar to appellant's initial incriminating statements, but that it was made in much greater detail. According to the trial court, the statement obtained in violation of appellant's rights was "merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury." *Commonwealth v. Knight,* 469 Pa. 57, 63, 364 A.2d 902, 905 (1976).

However, before a conclusion of harmless error can be made in this case, we must examine whether the subsequent statements were properly admitted. In such a situation, the burden is on the Commonwealth to demonstrate that subsequent statements were not products of the exploitation of the original illegality and were obtained under circumstances sufficiently distinguishable to purge them of their original taint. *Commonwealth v. Chacko,* 500 Pa. 571, 580, 459 A.2d 311, 316 (1983).

In two cases in which it was concluded that subsequent statements were shown to be sufficiently purged of an initial taint, *Chacko, supra,* and *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the initial illegali-

ty was the failure of interrogating police officers to administer *Miranda* warnings to a suspect in custody. *See also Commonwealth v. Craig,* 345 Pa.Superior Ct. 542, 498 A.2d 957 (1985). In both cases, the courts referred to this violation as one "technical" in nature, in that, although unwarned, there was no evidence in either case that the subsequent inculpatory statement which resulted was involuntary. Then, in both cases, once warnings were administered, the suspects chose to speak out again voluntarily in conformity with their original inadmissible statements.

However, this is not the same case, in that the *Miranda* violations here were much more serious and evidence a greater degree of coercion than do the *Chacko* and *Elstad* cases. The complete and unrelenting disregard by police authorities of appellant's invocation of his right to remain silent resulted in an exchange between them that was sought to be prevented by the *Miranda* decision.

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. *Miranda v. Arizona, supra,* 384 U.S. at 473–474, 86 S.Ct. at 1627.

Thus, appellant, who knew Detective Haldeman and who was known by him, was subjected to a barrage of questions by the detective and the trooper which can only be characterized as a callous disregard of appellant's rights and as an effort "to wear down his resistance and make him change his mind." *Michigan v. Mosley, supra.* This is evident from the detective's misrepresentation to appellant during this questioning that appellant had the right to stop answering, but that the detective had the right to continue questioning. Moreover, the officers' talk of arresting appellant's mother and sisters for conspiracy to commit murder if appellant did not confess to the murder was an empty and unenforceable threat designed only to overbear appellant's will. The result of this harassment was the sought after confession accompanied by appellant's request to see his mother. Minutes after his initial admission, appellant and his mother summoned police whereupon appellant made a

more complete statement inculpating himself as having killed the victim by beating her. Appellant then took Detective Haldeman to the burial site, where the body was recovered.

█ The trial court regarded appellant's meeting with his mother as a circumstance which evidenced a voluntary waiver of his rights, citing *Commonwealth v. Brown*, 328 Pa.Superior Ct. 207, 211, 476 A.2d 965, 967 (1984):

> An accused who has invoked his rights may change his mind and choose to waive his rights so long as it is he who initiates further communications, and so long as his waiver is voluntary and intelligent.

While that is the test for a determination of whether an accused who has invoked his rights has changed his mind and chosen to waive them, we do not agree that the facts herein support a conclusion that appellant was exhibiting a voluntary and intelligent waiver once he was coerced to admit his guilt initially.

In *Orgeon v. Elstad, supra,* the United States Supreme Court stated the relevant inquiry where a first unwarned, yet voluntary, statement has been made as to whether in fact the second statement was also voluntarily made.

> As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. *Id.* 470 U.S. at 318, 105 S.Ct. at 1298.

Our examination of the entire course of police conduct which resulted in the statements at issue here, persuades us that appellant was, in effect, disabled from waiving his rights and confessing voluntarily. We do not find circumstances rendering the subsequent statements purged of the initial taint. Because the initial statement was coercively obtained as a result of illegal police conduct, and because a confession is the most damning of all evidence,[2] we are

2. *Commonwealth v. Bullard,* 465 Pa. 341, 349–350, 350 A.2d 797, 801 (1976) (New trial granted where police disregarded appellant's initial exercise of rights).

constrained to reverse the judgment in this case and to remand for a new trial.

Judgment of sentence reversed; case remanded for a new trial. Jurisdiction is relinquished.