599 A.2d 1321

**COMMONWEALTH of Pennsylvania**

**v.**

**George HENRY, Appellant.**

Superior Court of Pennsylvania.

Argued April 25, 1991.

Filed Oct. 21, 1991.

Reargument Denied Dec. 27, 1991.

Marc Ira Rickles, Newton, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Warrington, for appellee.

Before KELLY, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for possession and possession with intent to deliver a controlled substance (cocaine), and possession of drug paraphernalia. Appellant contends that the trial court erred in refusing to suppress statements he made to police following his arrest. For the reasons set forth below, we agree with appellant that his first oral statement was improperly admitted; we nevertheless find that this error was constitutionally harmless. Accordingly, we affirm the judgment of sentence.

At approximately 5:10 p.m. on April 13, 1989, appellant was stopped and arrested in Ambler, Montgomery County, Pennsylvania. The warrantless arrest was premised upon information police had received from two confidential informants concerning appellant's alleged drug activity. Appellant was transported in a police cruiser to the Upper Dublin Township Police Department. Police searched the vehicle after appellant had exited it, and cocaine was found in the back seat. As a result, appellant was charged in Montgomery County with various drug offenses. He was arraigned at approximately 9 p.m. Thereafter, appellant gave an oral and written confession to police while he was in custody in Montgomery County. On April 14, police executed a search warrant at appellant's home in Bensalem, Bucks County, which resulted in the seizure of cocaine and related paraphernalia. Appellant was transported to Bucks County, and

the instant charges were filed. While in custody in Bucks County, appellant gave another oral confession to police.

Appellant filed a motion to suppress his statements to the police. These motions were denied.[1] Appellant then agreed to incorporate the suppression testimony into the record, and to proceed to a non-jury trial. The Commonwealth presented additional evidence at the bench trial, and on January 8, 1990, appellant was found guilty of all charges. In timely-filed post-verdict motions, appellant alleged error in the disposition of pre-trial motions. The motions were denied, and on August 27, 1990, appellant was sentenced to a three-to-six-year term of imprisonment. This appeal followed.

Our Supreme Court has summarized our standard of review in appeals from the denial of suppression motions as follows:

> As we stated in *Commonwealth v. Johnson*, 467 Pa. 146, 151–52, 354 A.2d 886, 889 (1976),
>
> > ... In reviewing this ruling our initial task is to determine whether the factual findings are supported by the record. "In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975). If, when so viewed, the evidence supports the factual findings we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are in error ...[.]
>
> See also, *Commonwealth v. Berkheimer*, 505 Pa. 506, 481 A.2d 851 (1984); *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983); *Commonwealth v. Patterson*, 488 Pa. 227, 412 A.2d 481 (1980); *Commonwealth v. Brown*, 473 Pa. 562, 375 A.2d 1260 (1977).

1. The court did suppress a statement that appellant made to the second confidential informant, which was overheard by a police officer when the informant telephoned appellant to arrange a drug buy. The propriety of this ruling is not at issue on appeal.

*Commonwealth v. Fahy,* 512 Pa. 298, 309, 516 A.2d 689, 694–95 (1986). *See also Commonwealth v. Hubble,* 509 Pa. 497, 504 A.2d 168 (1986) (Opinion Announcing the Judgment of the Court), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986).

Appellant contends that the court erred in refusing to exclude incriminating statements he made to police.[2] This argument focuses on the oral confession ap-

---

**2.** Appellant also contends that the trial court erred in (1) refusing to suppress physical evidence seized as a result of an allegedly illegal arrest; (2) refusing to suppress physical evidence seized from appellant's home pursuant to an allegedly defective search warrant; and (3) denying his motion to exclude evidence concerning the Montgomery County drug charges. These claims may be rejected summarily.

Appellant's contention that his initial arrest in Montgomery County was illegal is premised on the officers lacking probable cause. For this reason, appellant argues, all evidence obtained as a result of this illegality should have been suppressed. After carefully reviewing the suppression hearing, we agree with the trial court that the first hand knowledge police had of an arranged drug buy, combined with information provided by the confidential informant, which in turn was corroborated by the officers' observations of appellant's conduct, provided sufficient probable cause to justify the arrest without a warrant. *See Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988, 990 (1988). *See generally* W. LaFave, *Search and Seizure,* § 3.3(f) (1987 & Supp.1991). Moreover, as the trial court adequately disposed of this claim in its Opinion, we need not address it further.

Appellant's claim that the court should have suppressed the evidence seized during the execution of the search warrant at his home is similarly meritless. Appellant argues that probable cause did not exist to support the issuance of the warrant. The probable cause affidavit for the warrant included admissions that appellant made on the night of his arrest. We hold, *infra,* that this oral confession was obtained in violation of appellant's *Miranda* rights. Even when the confession is excluded from the analysis of the probable cause affidavit, however, it is clear that the affidavit was sufficient. Appellant had been stopped by police while he was on his way to meet a confidential informant to effect a pre-arranged delivery of cocaine. The informant had arranged the transaction, in the presence of a police officer, by telephoning appellant at his home. Consistent with this information, appellant was stopped and was found in possession of cocaine. Because these facts alone amply supported a finding that there was a fair probability that contraband would be found at appellant's home, the inclusion of appellant's confession in the affidavit does not defeat the finding of probable cause. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *See generally* W. LaFave, *supra,* at § 4.4(c).

pellant made in Montgomery County. Appellant argues that the statement taken from him while in police custody was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, appellant submits that his statement should have been suppressed because it was made after he had invoked his right to remain silent.[3] The Commonwealth, on the other hand, argues that appellant waived his *Miranda* rights. Under *Miranda*, if a suspect,

Finally, appellant claims that the court erred in denying his motion *in limine*, which sought to have excluded all evidence concerning the drug charges pending in Montgomery County. Appellant argues that this evidence was irrelevant. Reference to an accused's prior criminal activity is not admissible to prove the accused's propensity or character for such conduct. *See, e.g., Commonwealth v. Lark*, 518 Pa. 290, 302, 543 A.2d 491, 497 (1988); *Commonwealth v. Percell*, 499 Pa. 589, 592, 454 A.2d 542, 544 (1982). *See also* L. Packel & A. Poulin, *Pennsylvania Evidence* § 405, at 159 (1987 & Supp.1990). Evidence of other crimes may be admissible for other purposes, however. Thus, for example, courts traditionally have held that such evidence may be admitted to show (1) motive, (2) intent or knowledge, (3) absence of mistake or accident, (4) common scheme or plan, or (5) identity. E.g., *Commonwealth v. Crawley*, 514 Pa. 539, 556, 526 A.2d 334, 343 (1987). In addition, we have noted that, under a "same transaction" exception, "evidence of other crimes may be admissible where the evidence forms part of the chain or sequence of events which is part of the history of the case and it enhances the natural development of the facts." *Commonwealth v. Nolen*, 390 Pa.Super. 346, 353, 568 A.2d 686, 689 (1989) (citing *Commonwealth v. Lark, supra*), *allocatur granted*, 525 Pa. 644, 581 A.2d 570 (1990). *See also* L. Packel & A. Poulin, *supra*, § 405.1(a)(8), at 170-71. Here, we are satisfied that evidence regarding the Montgomery County drug offense was admissible under the "same transaction" exception. In addition, in light of the fact that appellant was charged in Bucks County with possession with *intent to deliver*, evidence regarding the attempted delivery in Montgomery County was relevant to demonstrate appellant's intent with regard to the cocaine and paraphernalia seized from his home.

3. We should note that, in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that when a suspect invokes his or her right to *counsel*, questioning must cease and may not be resumed until counsel has been provided or the suspect initiates the communication. In this case, although appellant claimed that he requested counsel, the police officers testified that he did not; the suppression court resolved this credibility determination against appellant, and because the court's finding is supported by the evidence, *Edwards* is inapplicable here.

indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

384 U.S. at 473–74, 86 S.Ct. at 1627–28 (footnote omitted). *See also Commonwealth v. Scarborough,* 491 Pa. 300, 421 A.2d 147 (1980); *Commonwealth v. Mignogna,* 401 Pa.Super. 188, 585 A.2d 1 (1990); *Commonwealth v. Carbaugh,* 356 Pa.Super. 42, 514 A.2d 133 (1986), *allocatur denied,* 515 Pa. 573, 527 A.2d 535 (1986); *Commonwealth v. Hackney,* 353 Pa.Super. 552, 510 A.2d 800 (1986). If this rule is violated, the prosecution may not use a suspect's responses to the custodial interrogation in its case-in-chief. *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612. *See also Nelson v. Fulcomer,* 911 F.2d 928, 933 (3d Cir.1990).[4]

■ Here, the facts are undisputed concerning the circumstances of appellant's statement. The only evidence presented on this question was the testimony of Officer William Joseph McDermott of the Upper Dublin Police Department. Officer McDermott testified that appellant was placed in a holding cell after his arrest. At approximately 6:00 p.m., within an hour of the arrest, McDermott read appellant his *Miranda* rights. N.T. November 14, 1989 at 17–18. Appellant refused to sign a form acknowledging that he had been made aware of his rights. *Id.* at 18. Appellant made no statement to police at this time. Appellant was arraigned at 9 p.m. Thereafter, McDermott again approached appellant and read him the *Miranda* warnings. When McDermott asked appellant if he wished

**4.** The responses can be used, of course, to impeach the accused's trial testimony. *See Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

to speak to police without a lawyer being present, appellant "responded he had no desire to speak with anybody at that time." *Id.* at 20–21. At this point, McDermott testified,

I told George [appellant] we had a search warrant for his house in Bucks County and that we were on our way over there. We had just finished up typing up the warrant and we were going to Bucks County to serve the warrant on his house and at that time he said, "You got me."

*Id.* at 21. McDermott immediately exploited this disclosure:

I asked him, "George, tell us whether you have any cocaine, do you have anything else in the house"?

He told me what he had left was in a cheese curl can with a false bottom and would be on the nightstand or bed table in the bedroom.

He also told me that his father would be home.

*Id.* This statement was not reduced to writing, but McDermott took a thorough written statement from appellant the next day, after appellant's home had been searched.[5] In the latter statement, appellant incriminated himself regarding both the cocaine that had been found in the police car, and the items that were found when the search warrant was executed.

On these facts, there is no question that appellant invoked his right to remain silent on the night of his arrest when he stated that he had no desire to speak with anyone. *See and compare* 1 W. LaFave & J. Israel, *Criminal Procedure*, § 6.9, at 531 n. 57 (1984 & Supp.1991) (collecting cases). Once a suspect invokes his or her right to silence, that right must be "scrupulously honored" by the police:

A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt "fully effective means ... to notify the

---

5. We note that the home was searched pursuant to a search warrant. The affidavit of probable cause filed in support of the warrant made reference to appellant's admission that there was cocaine in his home. Thus, the affidavit for this warrant was not completed until *after* appellant made this statement.

person of his right of silence and to assure that the exercise of the right will be scrupulously honored...." 384 U.S., at 479, 86 S.Ct., at 1630. The critical safeguard identified in the passage at issue is a person's "right to cut off questioning." *Id.*, at 474, 86 S.Ct., at 1627. Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

*Michigan v. Mosley,* 423 U.S. 96, 103–04, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (footnote omitted). We must determine whether the police fully respected appellant's right to remain silent, or whether appellant later waived that right.[6]

■ The Commonwealth suggests that appellant's right was scrupulously honored because the oral statement did not result from police *interrogation*, but from appellant's voluntary waiver of his right. We cannot agree. Custodial interrogation encompasses not only express questioning of a suspect in custody, but also its "functional equivalent," see *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); thus, *Miranda's* prohibition bars "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689–90 (footnotes omitted). Application of this rule necessarily is contextual. *Cf. Nelson v. Fulcomer,*

---

6. On the question of waiver, of course, the Commonwealth has the burden of demonstrating that "the statements of the accused were voluntary and the waiver of his constitutional rights was knowing and intelligent." *Commonwealth v. Edwards,* 521 Pa. 134, 149, 555 A.2d 818, 826 (1989).

*supra,* 911 F.2d at 934. As Judge Popovich noted in his concurring opinion in *Commonwealth v. Mignogna, supra:*

judicial inquiry in each instance should focus on the circumstances attending the defendant's invocation of his or her right to silence, as well as the circumstances attending any further attempt at questioning. Hence, the test should ask whether the official purpose of resuming questioning was to entice the arrestee to abandon his right to remain silent, or simply to find out whether he or she had a change of mind. Only then can it be concluded whether, in fact, the defendant's " 'right to cut off questioning' was 'scrupulously honored.' " *Mosley,* 423 U.S. at 104, 96 S.Ct. at 326; see also *Vujosevic v. Rafferty,* 844 F.2d 1023 (3d Cir.1988).

401 Pa.Super. at 218, 585 A.2d at 15 (POPOVICH, J., concurring).

Here, after careful review of all the circumstances attending appellant's oral statement, we find that his right to remain silent was not scrupulously honored, and that the confession resulted from custodial interrogation. As noted above, appellant unequivocally invoked his right to remain silent, and there is no indication that he later expressly or impliedly waived that right. The confession was not spontaneous, nor can the record support a finding that appellant spontaneously decided to waive his right to remain silent. Instead, appellant's confession was made only after the police determined to continue talking to him despite this assertion of his right to remain silent. Moreover, the nature of Officer McDermott's conversation with appellant was not neutral or innocuous. The Officer focused specifically on the criminal investigation, confronting appellant with the fact that he was going to execute a search warrant at appellant's home. Although the statement about the search warrant was not in question form, this alone is not dispositive. *See Rhode Island v. Innis, supra.* The obvious purpose of informing appellant of the warrant was to impress upon him the futility of his case, and the concomitant futility of remaining silent. McDermott's follow-up

question provides a further indication that, from the moment he initiated the conversation with appellant, he was attempting "to entice the arrestee to abandon his right to remain silent." *See Commonwealth v. Mignogna, supra* (POPOVICH, J., concurring). Appellant's initial response to McDermott, though inculpatory, was nevertheless vague ("You got me"). Rather than asking appellant what he meant by this, or if he now intended to waive his right to remain silent, the Officer proceeded to ask specifically whether there was cocaine in the house. Such a question, of course, did not seek an explanation of the prior statement, but went right to the heart of the Commonwealth's case against appellant, and the question obviously was designed to elicit an incriminating response. In light of these circumstances, we conclude that the Officer knew or should have known that his action was reasonably likely to elicit an incriminating response, and thus was the "functional equivalent" of custodial interrogation. Because appellant was interrogated by police immediately after invoking his right to silence, we hold that his right, under *Miranda* and its progeny, to cut off questioning was not scrupulously honored. The confession obtained as a result of this violation, therefore, should not have been admitted at trial.

Appellant also argues that other statements he made to police should have been excluded. We should first emphasize the narrow scope of this argument. Appellant made numerous statements to police in addition to the oral statement we have discussed above. For example, appellant volunteered a statement on his way to arraignment in Montgomery County, *see* N.T. November 15, 1989 at 5–6, he gave a signed confession to Officer McDermott at 1:00 p.m. the day after his arrest, *see* N.T. November 14, 1989, at 22, he made a statement to Bensalem Township Police Officer Michael Kruvczuk after he had been transported to Bucks County, *see id.* at 67–69, and he made a series of statements to Officer McDermott in the months following his arrest. *See id.* at 24–25. Appellant does not challenge the admissibility of all of these statements; instead, he focuses only on

the statements made to Officer Kruvczuk in Bucks County, *see* Brief for Appellant at 21, and thus we need not concern ourselves with the admissibility of the remaining statements.

Appellant's argument on the Bucks County statement verges on boilerplate, as he simply alleges that the statement is inadmissible as "fruits of the poisonous tree." *See id.* Although we have held that appellant's initial confession was improperly obtained, it does not follow that his later statements necessarily are inadmissible. *See generally* W. LaFave & J. Israel, *supra,* § 9.5. Importantly, the interrogation by Kruvczuk, unlike that conducted by Officer McDermott, was not inconsistent with appellant's prior assertion of his right to remain silent. As we have noted above, appellant asserted his right to remain silent by stating that he did not wish to speak to anybody "at that time." Thus, appellant did not indicate that he *never* wished to speak to police. The Bucks County statement also was made to a different officer, in a different county, and more than 15 hours following the first oral statement to McDermott. In addition, appellant was read his *Miranda* rights before he made the statement, and he expressly waived those rights. Although the questioning concerned the same offense (i.e., the possession of drugs and paraphernalia in appellant's home in Bucks County), the *Mignogna* Court recognized that this factor alone is not dispositive, *see* 401 Pa.Super. at 198, 585 A.2d at 6, and we are satisfied that, considered in light of all the circumstances, the statement to Officer Kruvczuk is admissible. *See id. See also Oregon v. Elstad,* 470 U.S. 298, 310, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985).

Our inquiry does not end here, as we still must determine whether appellant is entitled to a new trial. The Supreme Court of the United States recently has made clear that the erroneous admission of a confession can be constitutionally harmless, even if the confession was coerced. *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (physical coercion). *See also Common-*

*wealth v. Santiago,* 405 Pa.Super. 56, 591 A.2d 1095 (1990) (Miranda violation), *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977) (Miranda violation). Here, we are satisfied, beyond a reasonable doubt, that the erroneous admission of appellant's oral confession to Officer McDermott was harmless. The case against appellant was overwhelming, as the Commonwealth produced not only the cocaine and paraphernalia constitutionally seized (*see supra,* note 2) from appellant's bedroom, but also evidence of appellant's arranging the prior delivery in Montgomery County (which was relevant to demonstrating his intent to deliver, *see supra,* note 2), and his written, far more detailed confession that was made to Officer McDermott the day after his arrest.[7] This case, unlike *Fulminante,* does not involve a situation where it was difficult, if not impossible, to successfully prosecute absent the defendant's admissions. *See —— U.S. at ——,* 111 S.Ct. at 1258. In addition, and again unlike *Fulminante,* this is not a situation where the improperly obtained confession led to the admission of other prejudicial evidence. The confession was concerned only with whether and where cocaine would be found in appellant's home. Because the police already had sufficient probable cause to obtain a search warrant for appellant's home independent of his confession, these items inevitably would have been discovered. In short, this confession merely confirmed for the police what they already had probable cause to believe. We do not wish to downplay the potential harmful effect of improperly admitting a confession. As the *Fulminante* Court noted:

> A confession is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.... [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct...."

7. As we have noted above, appellant has raised no argument challenging the admissibility of this second statement.

*Id.* at ——, 111 S.Ct. at 1257 (quoting *Bruton v. United States,* 391 U.S. 123, 139–40, 88 S.Ct. 1620, 1629–30, 20 L.Ed.2d 476 (1968) (White, J., dissenting)). Nevertheless, on the record presented in this case, and in light of *Fulminante,* we must hold that the admission of appellant's oral statement was constitutionally harmless.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

KELLY, J., files a concurring opinion.

KELLY, Judge, concurring:

In all aspects except one, I join in the majority opinion. I agree that appellant's exercise of his right to silence was not "scrupulously honored" and that the error in admitting statements made thereafter was harmless in view of the fact that appellant's confession was both purely cumulative and wholly unnecessary to convict him of crimes for which his guilty had been otherwise properly and overwhelmingly established. However, I am unpersuaded that the United States Supreme Court's holding in *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) supports this result.

Before reaching the applicability of the harmless error doctrine, the Court in *Fulminante* addressed the question of whether a "credible threat of physical violence" improperly induced Fulminante into confessing. —— U.S. at ——, 111 S.Ct. at 1252, 113 L.Ed.2d at 316. A five to four majority of the Court agreed with the Arizona Supreme Court that under the totality of the circumstances, Fulminante's will was overborne and thus concluded that the confession obtained was a product of *actual* coercion. *Id.*

Conspicuously absent from the Court's decision in *Fulminante* is any discussion as to whether Fulminante's confession was obtained in violation of the Fifth Amendment prophylactic right to remain silent described first in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d

694 (1966). There is good reason for this fact: the question of the existence of a *Miranda* violation is materially distinct from the question posed to the Court in *Fulminante.* As the United States Supreme Court has explained, "[a] Miranda violation does not *constitute* coercion but rather affords a bright-line, legal presumption of coercion, requiring suppression of all unwarned statements." *Oregon v. Elstad,* 470 U.S. 298, 306 n. 1, 105 S.Ct. 1285, 1292 n. 1, 84 L.Ed.2d 222, 230–31 n. 1 (1985) (emphasis in original); *compare Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Unlike actual coercion, unwarned questioning does "not abridge [a defendant's] constitutional privilege [to remain silent] ...," but rather represents a departure "only from the prophylactic standards ... laid down by [the United States Supreme Court] in *Miranda....*" *Michigan v. Tucker,* 417 U.S. 433, 446, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182, 194 (1974).

This distinction is not without a difference. Although it is true that statements procured in violation of *Miranda* must be suppressed, the Court has held that fruit derived thereof is admissible. *Id.* For analogous reasons, the Court has held that presumptively involuntary statements taken in violation of *Miranda* may be used by the prosecution for impeachment purposes on cross-examination. *See Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).[1] These holdings do not extend to cases of actually coerced confessions.

Before *Fulminante,* the distinction between *actually* and *presumptively* coerced confessions was relevant with regard to harmless error as well. In deciding, as the Su-

1. I note that in *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975), our Supreme Court held that the Pennsylvania Constitution precluded the use of statements obtained in violation of *Miranda* even to impeach the defendant's trial testimony. In 1984, however, the people of Pennsylvania rendered dead letter law the *Triplett* holding by amending the constitution to allow for the prosecution's use of such statements to impeach. *See Commonwealth v. Baxter,* 367 Pa.Super. 342, 532 A.2d 1177 (1987). Accordingly, the United States Supreme Court's decision in *Harris v. New York, supra,* remains the law in Pennsylvania today.

preme Court did in *Fulminante*, that the improper introduction at trial of an *actually* coerced confession is subject to harmless error analysis, the Court overturned a well established line of precedent which held to the contrary. *See Malinski v. New York*, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945) (holding that introduction of an *actually* coerced confession deprives the defendant of his Fourteenth Amendment rights to due process even if ample evidence existed to otherwise support the conviction); *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964) (same); *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (holding introduction of *actually* coerced confession constitutes reversible error even where confession was cumulative in nature); *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (same). Essentially, the Court determined that the prejudicial quality of testimony regarding an *actually* coerced confession is, like all other improperly introduced testimony at trial, capable of review. At this point in time, the *Fulminante* decision stands as the sole, albeit the dispositive, case on this point.

In contrast, cases applying the harmless error analysis to the introduction of *presumptively* coerced statements are legion. *See e.g. Pennsylvania v. Muniz*, 496 U.S. 582, 605 & n. 22, 110 S.Ct. 2638, 2652 & n. 22, 110 L.Ed.2d 528, 555 & n. 22 (1990) (holding that although *Miranda* required the suppression of "testimonial" statements made before defendant was advised of his constitutional rights, "the state court is free, of course, to consider this [harmless error] question upon remand."); *Berkemer v. McCarty*, 468 U.S. 420, 443, 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317, 336 (1984) (applying harmless error analysis to improper introduction of statements obtained during custodial interrogation and without prior *Miranda* warnings); *Commonwealth v. Hubble*, 509 Pa. 497, 515, 504 A.2d 168, 177 (1986) (applying harmless error analysis to improper introduction of statements obtained in violation of Fifth Amendment right to counsel); *Commonwealth v. Rodgers*, 472 Pa. 435, 449, 372

A.2d 771, 777 (1977) (applying harmless error analysis to improper introduction of statements made following refusal to honor exercise of right to remain silent); *Commonwealth v. Cooper*, 468 Pa. 481, 486, 364 A.2d 296, 299 (1976) (applying harmless analysis to prosecutor's improper comment on defendant's election to remain silent); *Commonwealth v. Davis*, 452 Pa. 171, 178, 305 A.2d 715, 719 (1973) (same); *Commonwealth v. Caswell*, 316 Pa.Super. 462, 475, 463 A.2d 456, 462 (1983) (Cavanaugh, J., dissenting) (applying harmless error analysis to improper introduction of statements obtained following refusal to honor election to remain silent); *Commonwealth v. May*, 314 Pa.Super. 577, 582, 461 A.2d 308, 310 (1983) (Cavanaugh, J., dissenting) (applying harmless error analysis to improper introduction of statements obtained before defendant was advised of *Miranda* rights); *Commonwealth v. Flynn*, 248 Pa.Super. 62, 72, 374 A.2d 1317, 1322 (1977) (applying harmless error analysis to improper introduction of testimony regarding defendant's exercise of right to silence). Indeed, the only cases involving presumptively coerced statements which even arguably suggest that harmless error doctrine should not be applied are those in which the courts may be seen to apply a virtually *per se* harmful error presumption in the analysis. *See e.g. Commonwealth v. Bullard*, 465 Pa. 341, 349–350, 350 A.2d 797, 801 (1976) ("Because a confession is the most damning of all evidence, we cannot say that we are convinced beyond a reasonable doubt that the error did not affect the judgment."); *Commonwealth v. Carbaugh*, 356 Pa.Super. 42, 47, 514 A.2d 133, 137 (1986) (same conclusion); *Commonwealth v. Petrino*, 332 Pa.Super. 13, 29, 480 A.2d 1160, 1168 (1984) (same conclusion); *but see Commonwealth v. Holland*, 518 Pa. 405, 415, 543 A.2d 1068, 1072 (1988) (introduction of statements made by lay witnesses regarding the voluntariness of a confession found to be harmless error); *Commonwealth v. Maloney*, 469 Pa. 342, 355, 365 A.2d 1237, 1244 (1976) (curative instruction given following improper admission of statement regarding right to silence held sufficient not to require mistrial); *Commonwealth v. Mitchell*, 246 Pa.Super. 132, 138, 369 A.2d 846,

849 (1977) (recognizing that harmless error analysis is appropriate even if presumptively coerced confession is improperly introduced). Nonetheless, no such case holds that the harmless error approach is *inapplicable* in cases of presumptively coerced confessions.

The instant case, unlike *Fulminante,* involves merely a question of presumptive coercion. No evidence as to actual coercion is a part of the record, nor was any argument raised in this regard. Rather, appellant argues, and we agree, that his prophylactic right to silence as set forth in *Miranda* was violated when the police failed to "scrupulously honor" his "right to cut off questioning." *See Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975). With or without the benefit of the Supreme Court's holding in *Fulminante,* this Court would unquestionably be authorized and indeed required to address the question of whether the instant error was harmless. *See Commonwealth v. Rodgers, supra.* Thus, any reliance placed on *Fulminante* in support of this conclusion, I find to be misplaced.

As I agree that the error was harmless, I join in the result reached by the majority. Because I believe that *Fulminante* is unnecessary and largely irrelevant to this conclusion, I must concur.